THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HENDERSON LEWIS, a/k/a Charles Jackson, Defendant-Appellant.

First District (2nd Division)   No. 79-710

Opinion filed May 6, 1980.

Lawrence Wolf Levin and Martin S. Agran, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and Richard F. Burke, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Following a jury trial defendant, Henderson Lewis, was found guilty of the offense of solicitation and was sentenced to a term of three years in the penitentiary. On appeal he argues: that statutory provisions governing the use of eavesdropping equipment were not complied with; that the offense of solicitation is unconstitutional as a denial of first amendment rights; that the tape recording and transcript of the solicitation were improperly admitted into evidence; that remarks by the assistant State's Attorney to defense counsel jeopardized defendant's right to a fair trial; and, finally, that defendant was not proved guilty beyond a reasonable doubt.

Prior to trial a hearing was held on defendant's motion to quash the consent for use of eavesdropping equipment and to suppress the resultant tape recordings. An assistant State's Attorney testified that on the morning of June 20, 1977, he spoke with a Chicago police officer and two brothers, Braulio and George Negron, who claimed to have been solicited by defendant to set fire to a warehouse. Following the conversation with the brothers, the assistant State's Attorney executed the documents (see Ill. Rev. Stat. 1977, ch. 38, pars. 14—2(a), 108—A—a, 108—A—3) required to secure judicial approval for the proposed eavesdropping of the next meeting between the Negrons and defendant. He then spoke to the State's Attorney, Bernard Carey, on the telephone and, after informing him of the facts of the case, the contents of the application, and the time period requested for the eavesdropping (12:30 p.m. June 20 to 11 a.m. June 21), the assistant State's Attorney was granted authorization to submit an application for judicial approval. The assistant State's Attorney then went to the chambers of Judge James Bailey, who after speaking to each of the

parties—the assistant State's Attorneys, the police officer, and the Negron brothers—authorized the order approving the use of eavesdropping equipment for the limited time requested.

Following the testimony of the assistant State's Attorney, both Bernard Carey and Judge Bailey were called. Each verified the above described events. Defendant's motion was denied and the case proceeded to trial.

A co-owner of Union Van Lines testified that a man, whom he identified in court as defendant, stored personal belongings and furniture in Union's warehouse on North Broadway in Chicago. Defendant deposited $35 to cover, in part, required insurance charges of $2.40 a month for minimum coverage of $2000. Defendant's goods were stored in the second floor of the warehouse. A second owner testified that he directed his secretary to send an invoice to defendant which indicated that $2.40 had been deducted from defendant's $35.00 deposit to cover the monthly premium for $2000 worth of insurance.

Braulio Negron testified that on June 17, 1977, defendant, in his red "T-Bird," took Braulio to the warehouse on North Broadway, where defendant told Braulio that he wanted the warehouse burned to collect the insurance money. After promising to discuss it with his brother George, Braulio left defendant and went to Officer Salyers, who at one time had arrested both of the brothers. Braulio stated that he told the officer of defendant's proposal because he had just completed a probation period and did not want further trouble. The following day, Braulio and George met with defendant who offered them $100 and the "T-Bird" after the job was complete. On June 20, Braulio consented to wear wiretap equipment, and after receiving judicial authorization, the police outfitted him with a tape recorder and receiver.

Braulio, accompanied at a distance by a police surveillance vehicle, found defendant sometime before midnight on June 20. They set a meeting for between 1:15 and 1:30 a.m. that night at a different location. At that time Braulio, wearing the taping equipment, asked defendant to repeat his proposal for his brother George. Once again defendant talked of burning the building, and he gave Braulio $6 for gasoline. Braulio returned to the surveillance vehicle and gave the money to the police officer.

Officer Kenny, an investigator for the State's Attorney's office, testified that he placed the recording equipment on Braulio. He identified People's Exhibit 7 as the tape removed from Braulio and marked by another officer at about 1:45 a.m. Another tape was identified as that made in the surveillance van from the same Braulio-defendant conversation. Kenny kept both tapes in his possession until he turned them over to Judge Bailey. Subsequent to this testimony, the tape was played. Braulio,

who had been recalled to the stand, testified that it was a true and accurate recording. George Negron substantially affirmed his brother's testimony but added the admission that he had smoked marijuana prior to the recorded meeting with defendant. Officer Salyers reiterated the above testimony and stated that although he had previously arrested the Negron brothers, no charges were pending at the time of defendant's surveillance and no promises were made in return for Braulio's testimony.

Defendant testified that he had given Braulio money, but to induce him to stay away from "his girl on the corner," not to burn down a building. He denied that it was his voice on the tape making incriminating statements but admitted that he might have heard some of the conversation and that he did say other things on the tape. Defendant maintained he did not offer the Negrons his car to burn the warehouse. Instead, he accused Braulio of stating, without any solicitation on defendant's part, that he intended to set fire to buildings and suggesting that defendant might profit from a particular warehouse fire. The State played the tape in rebuttal. A verdict of guilty was returned and this appeal followed.

Defendant first contends, as he did at the pretrial suppression hearing, that the eavesdropping did not receive proper consent from the State's Attorney. The governing statute provides in relevant part:

> "The State's Attorney may authorize an application to a circuit judge for, and such judge may grant in conformity with this Article, an order authorizing or approving the use of an eavesdropping device * * *." (Ill. Rev. Stat. 1977, ch. 38, par. 108—A—1.)

In the instant case, there is no dispute that the State's Attorney was consulted and advised by the assistant State's Attorney of the facts of the case and the pendency of the application. Further, the undisputed testimony of both reveals that the State's Attorney authorized and approved the assistant State's Attorney's proceeding with the application. The only question presented is whether it is necessary that the State's Attorney execute the application or appear in person before the judicial officer.

■■ Although it has been held that the legislature contemplated that any assistant State's Attorney could authorize the eavesdropping application (*People v. George* (1978), 67 Ill. App. 3d 102, 106, 384 N.E.2d 102, *cert. denied sub nom. George v. Illinois* (1979), 48 U.S.L.W. 3290), such an expansive interpretation is not necessary under the facts in the instant case. Rather, the procedures followed here were more than adequate to satisfy the safeguards contemplated by the statute, which requires that authorization of the State's Attorney be garnered for an eavesdropping application. The assistant State's Attorney received that authorization and

acted upon it. Contrary to defendant's contention, there is no requirement that the authorization be in writing. While written authorization may be the preferred procedure, if only to forestall litigation of whether or not there was actual authorization, it is not the only way to comply with the statute. (See *People v. Swimley* (1978), 57 Ill. App. 3d 116, 124-25, 372 N.E.2d 887, *cert. denied*, 439 U.S. 911, 58 L. Ed. 2d 257, 99 S. Ct. 281 (first assistant State's Attorney can give authorization if State's Attorney is unavailable or otherwise absent); *People v. Marlow* (1976), 39 Ill. App. 3d 177, 350 N.E.2d 215 (State's Attorney can delegate his authority to give eavesdropping consent to specifically indicated individual); but see *People v. Porcelli* (1974), 25 Ill. App. 3d 145, 148-49, 323 N.E.2d 1 (authorization which appeared to be given after eavesdropping was initiated and which was too broad in scope did not comply with statute).) Accordingly, the trial court in the instant case correctly denied the motion to quash the consent for wiretapping.

■■ ■ Defendant raises two contentions related to trial rulings on admission of evidence. He initially claims the rules of best evidence, hearsay, and undue repetition and improper emphasis were violated when the transcript of the tape recordings was admitted into evidence and submitted to the jury. Neither the objection at trial nor the post-trial motion specified these grounds as error, but instead raised issues of authenticity and reliability. Since those grounds not raised at trial are waived on appeal, defendant is confined to those arguments introduced below, lack of authenticity and reliability of the transcript. (See *People v. Robinson* (1974), 20 Ill. App. 3d 777, 782, 314 N.E.2d 585.) However, defendant's extensive use of the transcript in cross-examination and, indeed, his initiation of its use to elicit testimony to support and enhance his theory of the case, belie his trial objections. While the better procedure would have been to introduce authenticating testimony by the person who listened to and transcribed the tape, any error in the admission of the transcript was harmless where the jury had an opportunity to listen to the tape and where defendant used the transcript to present his theory of the case and to impeach prosecution witnesses.

■■ The second evidentiary claim, that the State did not provide a sufficient foundation for the admission of the tape recordings, is similarly without merit. We recently discussed foundation requirements for the admission of tape recordings in *People v. McCommon* (1979), 79 Ill. App. 3d 853, 399 N.E.2d 224. As in the instant case, in *McCommon* objections were raised to the State's alleged failure to show that the person wearing the listening device was competent to operate it and that the voices on the tape were those of the parties to the solicitation. Defendant here admitted that he was a party to the conversation, but denied that it was his voice which proposed arson. Two other parties to the conversation, the Negron

brothers and the officer who monitored the taping in the surveillance vehicle, testified to the tape's accurate portrayal of the conversation. Such validation was held sufficient in *McCommon* to establish that the recording was authentic and reliable. Defendant also objects to the competence of the individual wearing the eavesdropping device to operate the machine and states that a showing of competence was a necessary element of foundation. This contention was also discussed and dismissed in *McCommon* where, as in the case at bar, the person doing the recording was informed how to operate the machine and the recording was otherwise testified to as accurate at trial. The claim is also raised that the tape was unintelligible and incomplete in part, but the tape was not included in the record on appeal, so we must defer to the trial judge who had an opportunity to hear the tape and evaluate its reliability. Additionally, we note that the court reporter was able to transcribe much of the tape as it was played at trial, likewise indicating the clarity of the recording. Further, as noted in *McCommon*, the circumstances of the hidden microphone were not such as to lend themselves to maximum quality of sound. Thus we conclude there was sufficient foundation for the admission of the tape recording into evidence.

Defendant next argues that the offense of solicitation is a violation of defendant's first amendment rights. This argument will be addressed in tandem with his later contention that he was not proved guilty beyond a reasonable doubt.

Defendant cites three Supreme Court cases to support this first amendment claim, each of which considers the right to espouse unpopular or unorthodox views. In the instant case, however, the conduct at issue is comprised of three parts: speech; acts (meetings, monetary support); and intent. In *People v. McCommon*, we discussed the elements of the crime of solicitation and focused on its requirement of specific intent that the offense be committed. The specific intent required can be inferred from surrounding circumstances and acts of the defendant. (*E.g., People v. Jackson* (1976), 42 Ill. App. 3d 322, 327-28, 355 N.E.2d 653.) Thus the requirement of criminal intent transforms mere recitation of "loose" words which may mandate first amendment protection into the offense of solicitation. (See generally *United States v. Cerone* (7th Cir. 1971), 452 F.2d 274, 286, *cert. denied sub nom. Angelini v. United States* (1972), 405 U.S. 964, 31 L. Ed. 2d 240, 92 S. Ct. 1168; *cf. Chicago Real Estate Board v. City of Chicago* (1967), 36 Ill. 2d 530, 552-53, 224 N.E.2d 793 (upholding fair housing ordinance which prohibited certain types of solicitation to sell or lease property from attack on first amendment grounds—"Where speech is an integral part of unlawful conduct, it has no constitutional protection").) Moreover, as discussed in *People v. Burleson* (1977), 50 Ill. App. 3d 629, 365 N.E.2d 1162, in the context of the

inchoate offense of conspiracy, public policy mandates that the law be able to step in where danger becomes manifest that a criminal act is imminent. Thus the solicitation statute delineates this "imminent" point as that point when the criminal intent that a crime be committed is combined with the commanding, encouraging or requesting of another to commit that offense. If defendant here has been proved guilty beyond a reasonable doubt, his first amendment claim has been disproved, since the crucial element of criminal intent that an offense in fact be committed, concomitant with words or acts specifically inciting another person, removes his conduct from the protection of the first amendment.

As previously discussed, intent can be inferred or proven by circumstances surrounding the conduct of defendant. A review of the record provides ample substantiation of the State's contention that defendant intended that the warehouse storing his goods be set fire by the Negron brothers. Their testimony, particularly as corroborated by the tapes of the solicitation, overwhelmingly evince criminal intent and acts to facilitate and encourage arson. Accordingly, in the light of the explicit testimony and its logical inferences, we find the evidence sufficient to support the verdict of the jury.

■■ ■ Defendant's final contention is that remarks of the assistant State's Attorney directed to the possibility that defense counsel's active representation of defendant could cost defense counsel's wife her job as an assistant State's Attorney violated fair trial/due process requirements. While it may be suggested that the proper objection would be on sixth amendment grounds of deprivation of right to effective assistance of counsel, neither basis would mandate reversal in the instant case. The remarks attributed by defense counsel to assistant State's Attorney Iavarone have no place in any trial process. Such remarks are to be deplored and condemned. The record reflects defense counsel afforded his client an able and vigorous defense. Therefore, while certainly not condoning the unprofessionalism of the prosecutor, we cannot find that it impaired defendant's right to effective assistance of counsel or his right to a fair trial.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

PERLIN, P. J., and DOWNING, J., concur.