THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ERSKIN MELCHOR, Defendant-Appellant.

First District (2nd Division)   No. 84—0985

Opinion filed September 17, 1985.

John L. Gubbins, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and C. Jeffrey Thut, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant Erskin Melchor was charged by indictment with one count of possession and one count of delivery of a controlled substance. After· a jury trial, defendant was found guilty of both counts, sentenced to 12 years in the Illinois Department of Corrections, and fined $28,122.

Defendant seeks a reversal of the conviction on the grounds that: (1) certain tape recordings were improperly admitted into evidence; (2) a transcript of the alleged tape recordings was improperly used; and (3) the State improperly introduced evidence from an inventory bag that was unsealed by the State before being brought into court.

Gregory Grant, a former Chicago police officer and an acquaintance of defendant, was working as an undercover agent for the Chicago Police Department Internal Affairs Division. He admitted that he had been selling drugs from the mid-1960's to June of 1982. He also admitted lying about his drug use on his police application and on other pertinent occasions. He sold drugs as a business to support his cocaine habit. Defendant was a member of the Chicago police department. Grant participated in the investigation of Melchor as part of a plea arrangement.

Prior to May 3, 1982, Grant had two telephone conversations with Melchor. Pursuant to authorization, Grant recorded each of these conversations. The first conversation took place on April 20, 1982. Grant placed a phone call to defendant's telephone number from the State's Attorney's office. Sergeant Thomas Chandler, a Chicago police officer, was listening on an extension telephone. The next phone call was placed to defendant's residence on April 21, 1982, from a pay phone near the Museum of Science and Industry. Grant and Sergeant Chandler shared the same telephone earpiece during this conversation.

Grant, who knew defendant personally, testified that the man with whom he spoke over the phone on each of these occasions, with Ser-

geant Chandler listening, was defendant. He also testified that the recordings were an accurate depiction of the conversations. Defendant spoke approximately three words during the first conversation and approximately five words during the second. The tapes of these phone conversations were admitted into evidence. There is no dispute about the use of these tapes.

The next court-authorized recording took place on May 3, 1982. This was an alleged audio recording of the drug transaction charged in the indictment. For reasons not explained in the record, the State departed from its prior procedure and did not use Grant to lay the foundation for the admission and use of the tapes of the May 3, 1982, transaction.

At approximately 5:30 p.m. on May 3, 1982, Sergeant Chandler, several other Chicago police officers, a Federal agent and Frank Kenny, a technician with the State's Attorney's office, met with Gregory Grant in the parking lot of the Museum of Science and Industry. Kenny testified that Grant was equipped with two separate tape recording devices in order to tape an alleged drug deal that was to take place at 7 p.m. at defendant's residence. The first system was a Nagra tape recorder, consisting of a small microphone that picked up sounds close to Grant and transmitted them directly to the Nagra tape recorder strapped to his waist.

The second system consisted of a small radio transmitter also attached to Grant's body. This transmitter, referred to as a "CAL" unit, broadcast sounds close to Grant over the airwaves to a radio receiver located in a surveillance van. The alleged conversations between Grant and defendant were then monitored in the van and tape recorded. The occupants of the van could hear the transmitted conversations. Kenny testified that he tested the equipment and both systems were operational.

Grant then drove to defendant's apartment building in an undercover police car. Sergeant Chandler and Technician Kenny followed in the surveillance van. Other police and agents followed in an unmarked police vehicle.

Grant testified that defendant arrived at about 7 p.m. with two other men. Grant then got out of his car and they all went into defendant's apartment together. Sergeant Chandler testified that he had a clear view of the entrance to the apartment building but could not see defendant's apartment. The defense disputed this and presented photos and other evidence to show that shrubbery and other obstructions would have prevented Sergeant Chandler from having a view of the entrance.

There was much activity in defendant's apartment with people moving from room to room and phones ringing. Grant claimed he purchased 31½ grams of cocaine from defendant. He acknowledged that tapes shown to him by the prosecutor were tapes of the alleged drug deal. Grant did not testify that he listened to the tapes to verify their accuracy nor was he asked about any transcripts made of the tapes.

Technician Kenny testified that he heard Grant speaking to other persons over the "CAL" unit transmitter and turned on the recorder. The audio tapes were true and accurate reproductions of the conversation he heard on May 3 in the van. He accounted for much of the chain of custody of the tapes. He made no mention of the transcripts made from the tapes.

Sergeant Chandler admitted that his only familiarity with defendant's voice consisted of overhearing the April 20 and 21, 1982, telephone conversations between Grant and defendant. On one occasion, defendant spoke approximately three words and, on the other, approximately five words. Chandler did not identify defendant's voice on any of the tapes and did not mention the transcripts.

A transcript of the tapes was prepared by the State. Certain statements were attributed to Grant, others to defendant, and many were merely identified as "a Voice." There is nothing in the record to indicate who prepared the transcript or decided that certain statements in the transcript should be attributed to defendant, nor did anyone vouch to the accuracy of the transcript. The jury was permitted to use the transcript to follow the tapes as they were played for them. The transcripts were then taken away from the jurors. Before and after the tapes were played, the court instructed the jury that the transcripts were provided only to assist the jury in determining what was said and who said it.

The defense objected to the tapes, the transcripts, and the designation of the speakers on the transcript.

## I

■ It is well established in Illinois that sound recordings, which are otherwise competent, material and relevant, are admitted in evidence if a proper foundation has been established to assure the authenticity and reliability of the recordings. (*People v. Johnson* (1984), 122 Ill. App. 3d 532, 540, 461 N.E.2d 585; *People v. McCommon* (1979), 79 Ill. App. 3d 853, 866, 399 N.E.2d 224; *People v. Spicer* (1978), 61 Ill. App. 3d 748, 758, 378 N.E.2d 169, *rev'd on other grounds* (1979), 79 Ill. 2d 173, 402 N.E.2d 169, *cert. denied* (1980), 446 U.S. 940, 64 L. Ed. 2d 794, 100 S. Ct. 2162.) A proper foundation

may be established through the testimony of one who is a party to the conversation. This was done when Grant testified regarding the tapes of his telephone conversations with defendant on April 20 and 21, 1982. There is no dispute regarding these tapes.

Grant, a party to the conversation of May 3, 1982, who activated the Nagra tape recorder and wore the transmitter that provided the tape on the "CAL" unit, was not used by the State to establish the foundation for these tapes that allegedly recorded the crime for which defendant was indicted. Defendant does not challenge the chain of custody. He claims that Grant is the only witness who could establish a proper foundation for the admission of the tapes and erroneously cites *People v. Spicer* (1978), 61 Ill. App. 3d 748, 378 N.E.2d 169, in support of his position.

■ Technician Kenney's testimony satisfied the foundation requirements. He listened to the transmission of the conversation as it was taking place. He also listened to the tapes made of the conversation and testified that they were a fair and accurate reproduction of the conversation under surveillance. Contrary to defendant's assertion, the fact that Kenny was not physically present during the alleged drug transaction being recorded does not render him incompetent to testify to the tape's veracity. The fact that he could hear the conversation as it happened is sufficient. *People v. Lewis* (1980), 84 Ill. App. 3d 556, 560-61, 406 N.E.2d 11; *People v. Spicer* (1978), 61 Ill. App. 3d 748, 758, 378 N.E.2d 169.

In *Spicer*, relied upon by defendant, the foundation witness was not physically present during the commission of the crime but listened to the events being recorded through a monitoring device. Therefore, the testimony of Technician Kenny provided ample evidentiary foundation for the admission of the audio tape recordings. The tapes here, as in *Spicer*, prove that certain events took place and that a crime in fact had been committed. However, since the identity of the speakers was not established, the tapes do not prove that the defendant was the perpetrator of the crime. (*People v. Spicer* (1978), 61 Ill. App. 3d 748, 758-59, 378 N.E.2d 169.) So, the tapes were properly admitted to establish that a crime was committed on May 3, 1982.

## II

Despite defendant's repeated motions and requests, the State did not produce the tapes or transcript until shortly before the tapes were actually played for the jury. Defendant does not claim any error due to this delay.

Having succeeded in gaining admission of the May 3, 1982, tapes

in evidence, the State proceeded to connect defendant to the tapes. To achieve this objective, it presented an alleged transcript of the tapes with an identification of speakers in the left-hand margin. The speakers were identified as "Grant," "Melchor" or "a Voice." There is nothing in the record to indicate who prepared the transcript and on what basis the names of the speakers were inserted in the margin. This lack of foundation is in conflict with the approved procedure for identification of a defendant in a transcript. (*United States v. Slade* (D.C. Cir. 1980), 627 F.2d 293, 303, *cert. denied* (1980), 449 U.S. 1034, 66 L. Ed. 2d 495, 101 S. Ct. 608.) In *Slade*, the use of a transcript was upheld by extensive testimony authenticating the accuracy of the transcripts:

> "Detective Kenneth Johnson testified concerning the preparation of the transcripts. [Citation.] He developed preliminary drafts from the original tapes, identifying the informants from personal knowledge and other voices by references. Johnson then would play and review the tapes with the informants to determine who was talking. Both informants testified that the enhanced tapes and transcripts corresponded accurately. Finally, while the tapes were played in court, the informants identified the speakers and explained what was taking place." 627 F.2d 293, 303.

Defendant offered to stipulate to the use of the transcript if the names in the left hand margin were removed. This offer was rejected. The trial court then allowed the jury to use the unauthenticated transcript with a cautionary instruction that the jury was "not to give independent weight to the transcript" but that the transcript was merely an aid to the jury "for the limited purpose of assisting the jury in *what* was said at that time and *who* said it." (Emphasis added.)

■ The State relies on *People v. Lewis* (1980), 84 Ill. App. 3d 556, 406 N.E.2d 11, to support the use of transcripts without the direct testimony of the person who prepared the transcript. In *Lewis*, there was in effect no dispute as to the accuracy of the transcripts because they were used by both sides. This court held that any error was harmless because the "defendant used the transcript to present his theory of the case and to impeach prosecution witnesses." (84 Ill. App. 3d 556, 560, 406 N.E.2d 11.) In this case, the defense did not use nor acquiesce in the use of the transcript.

Further, in *Lewis*, this court held that the better procedure "would have been to introduce authenticating testimony by the person who listened to and transcribed the tape ***." 84 Ill. App. 3d 556,

560, 406 N.E.2d 11.

The State also argues that *People v. Spicer* (1978), 61 Ill. App. 3d 748, 378 N.E.2d 169, allows the use of the tape solely on the authenticating testimony of a witness who overheard the conversation from a remote location. The State fails to point out that, in *Spicer*, a witness was also presented to testify to the accuracy of the transcript and that there was no dispute as to the accuracy of the transcript. In addition, in *Spicer*, the tape was admitted for the limited purpose of establishing that an offense was committed, not for the purpose of linking the defendant to the offense. In the case at bar, there can be no question that the tapes and transcript were offered for the purpose of linking defendant to the crime. Thus, the evidence was highly prejudicial to defendant.

By giving the cautionary instruction, at the urging of the State, the trial court added its credibility to the unauthenticated transcript. Telling the jury that the purpose of the transcript was to assist it in determining "what was said and who said it" seriously prejudiced the rights of defendant. The identity of speakers is not recorded on the tape at all, so the unauthenticated transcript was, in effect, adding a hearsay dimension to the words spoken on the tape.

## III

■ Defendant contends that the evidence, which included $1,000 in United States currency and various papers and letters belonging to defendant, were improperly withheld from him. Defendant claims that he planned to use these items in his defense. However, the trial court properly withheld the currency under standard procedure, which allows the court to do so until it makes a determination as to what should be done with the money. As to the personal papers, defendant has not shown how he was prejudiced by not having access to or use of them. Accordingly, this contention is without merit.

■ Defendant also contends that the fact that the evidence bag containing certain items had been opened before being brought into the courtroom, coupled with the fact that other items were missing from the bag, conclusively establishes that the evidence introduced at trial was so strongly tainted that it should have been excluded. However, defendant offers no reason as to why he did not request discovery or return of the evidence when he apparently knew that certain evidence had been inventoried under No. 870869. This evidence was discovered by defendant during cross-examination, when defendant presented the inventory slip to the witness. Thus, defendant apparently had knowledge that some items belonging to him had been in-

ventoried under that number. It can only be assumed that this action was a part of defendant's trial strategy.

Moreover, defendant has offered no evidence that the items introduced at trial, specifically a Cocaine Consumer's Handbook, did not belong to defendant or that the evidence was in any way altered to prejudice defendant. In short, defendant has not shown that the evidence was tainted. The propriety of admitting physical evidence rests primarily upon the trial court, whose decision will not be disturbed absent an abuse which prejudices a defendant. *People v. Ford* (1980), 83 Ill. App. 3d 57, 65, 403 N.E.2d 512, quoting *People v. Cole* (1975), 29 Ill. App. 3d 369, 375, 329 N.E.2d 880.

Although in no way may this be construed as an approval of the actions of the police officer and assistant State's Attorney, the chain of possession was sufficiently established and the evidence itself negated the possibility of tampering, alteration or substitution. (See *e.g., People v. Terrile* (1980), 86 Ill. App. 3d 665, 408 N.E.2d 234.) Therefore, the evidence was properly admitted.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial consistent with the views expressed herein.

Reversed and remanded.

STAMOS, P.J., and HARTMAN, J., concur.