THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RICHARD E. COCHRAN, Defendant-Appellant.

Fourth District   No. 4—88—0078

Opinion filed August 18, 1988.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Hugh Finson, State's Attorney, of Monticello, for the People.

JUSTICE SPITZ delivered the opinion of the court:

In this appeal, the defendant Richard E. Cochran challenges the judgment entered by the circuit court of Piatt County after a jury found defendant guilty of the offenses of criminal damage to property and criminal damage to property having a value in excess of $300. (Ill. Rev. Stat. 1985, ch. 38, par. 21—1(a).) Defendant was sentenced to one year of probation for the criminal damage to property conviction and 18 months' probation for criminal damage to property having a value in excess of $300. A condition of six months' periodic imprisonment over weekends from January 9, 1988, to October 9, 1988, was added to the sentence and defendant was ordered to pay $2,399.83 as restitution, a $500 fine, plus costs.

In this appeal, only one issue is raised. That issue is whether the trial court erred in refusing to allow the jury to hear tape recordings of a telephone conversation between defendant and Patricia Carpenter, a witness for the State, even though the court, after determining the tapes had impeachment value, summarized the contents of the conversation to the jury.

Four occurrence witnesses testified at trial concerning the events on the night of October 30, 1986. David Boitnott was Shelly Estrada's boyfriend. The two of them drove to Estrada's home after work at approximately 8:30 p.m. Estrada resided with her mother, Patricia Carpenter. Boitnott and Estrada watched television until approximately 9:30 p.m. when they heard a car pull into the driveway in a noisy fashion. Concerned about the noise and thinking they saw the defendant, they awakened Carpenter, who had been asleep with her boyfriend, Mark Isaac. Carpenter got up and the three went outside to investigate.

The defendant and Carpenter had known each other for a number of years and had lived together for two or three years. The defendant was boisterous and demanded to know who owned the jeep which was parked in the driveway. He also demanded to see the jeep's owner. The jeep belonged to Isaac. Carpenter went inside to awaken Isaac, which took some effort.

Although the time sequence varied somewhat from witness to witness, all four witnesses generally agreed that the defendant damaged Isaac's jeep by knocking out various windows with a club, slashing the tires, and puncturing the radiator with a tire iron.

When Boitnott tried to enter Estrada's Maverick to drive for help, because there was no working phone at Carpenter's residence,

the defendant opened the hood of that vehicle and removed the spark plug wires from the engine. He also cut one of the tires. Defendant threw the spark plug wires into his own car and using what appeared to be a gun, threatened the witnesses. Boitnott left on foot to call the police from a neighbor's house. During the incident Carpenter and the defendant personally struggled. After the defendant eventually drove away, the police arrived.

State Trooper Patrick Callahan interviewed the defendant soon after the occurrence and collected evidence which he said the defendant volunteered to give him. Among these items were the defendant's pellet gun and some spark plug wires. The defendant told Callahan he had been drinking in a tavern and was accosted in the parking lot by Carpenter and her friends. She taunted the defendant with her new boyfriend and his new car, and they argued verbally and physically. Carpenter's new boyfriend threw an object through the windshield of the defendant's car and Carpenter slashed his tire. The couple drove off and the defendant gave chase in his car until he realized his tire had gone flat. After stopping to change his tire, the defendant drove home, where he was soon after greeted by the police. In a statement two weeks later, the trooper said the defendant changed his account to increase the distance from the tavern to the location where he had been when forced to change his tire.

An auto body repairman testified as to the cost of repairs to Isaac's jeep. He testified he repaired the jeep and charged $2,560, which amount had been paid at the time of the trial.

The *pro se* defense at the trial focused on Carpenter's bias toward defendant and defendant's attempt to raise a reasonable doubt in the minds of the jurors by demonstrating to the jury Carpenter was capable of having the cars damaged and fabricating the story about defendant's involvement in an attempt to ruin defendant financially. In presenting this defense, defendant attempted to introduce five tape cassettes which are recordings of telephone conversations involving Carpenter. Carpenter had testified she harbored no animosity toward defendant and defendant attempted to use these tapes for impeachment. The trial judge listened to the tapes outside the presence of the jury. While refusing to allow the jury to hear the tapes, the trial judge summarized the tapes to the jury as follows:

> "The Court would inform the jury at this time that Mr. Cochran had certain tape recorded messages from Patricia Carpenter. This is part of the evidence that you should consider in this case. They were standard type of tapes that one would get on an answering machine if any of you have a phone answering

device, it's that type of tape I am referring to. Mr. Cochran had several of those tapes where he either recorded conversations that he was having with Mrs. Carpenter or she called up and left messages on the answering machine. During the course of these various conversations, Ms. Carpenter yelled and screamed and used a great deal of foul language towards Mr. Cochran, and clearly exhibited her animosity towards the Defendant in those conversations. You should take that into account as it weighs against her statement on the witness stand that she had no animosity towards him when she testified previously last week."

In the taped conversation, Carpenter uses excessively profane language in threatening physical harm to the defendant. As the trial court pointed out, the tapes clearly establish Carpenter's animosity toward defendant and impeach her testimony to that limited extent. The statements also refer to Carpenter's use of drugs. However, she had not been cross-examined as to that matter.

The bias of a witness is always relevant for the purpose of discrediting that witness so as to affect the weight the jury is to give the testimony. If a defendant is not permitted to make a record from which to argue the bias or lack of impartiality of a witness, even if the defendant is permitted to cross-examine the witness as to bias, then the defendant has been denied the right to effective cross-examination, a constitutional error of the first magnitude. (*Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105; *People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 9.) As a general rule, the manner and scope of cross-examination is within the trial court's discretion, and in the absence of a clear abuse of discretion resulting in manifest prejudice to defendant, the trial court's decision with regard to the extent of permissible cross-examination will be upheld. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.) However, authority supports the proposition that prohibiting cross-examination as to bias, motive, or interest is reversible error. *People v. Hobson* (1979), 77 Ill. App. 3d 22, 396 N.E.2d 53.

Recently, a reviewing court of this State has discussed a defendant's use of a tape recording at a trial. In *People v. Gaurige* (1988), 168 Ill. App. 3d 855, 863, 522 N.E.2d 1306, 1310, the court said:

"Under Illinois law, sound recordings which are otherwise competent, material and relevant, are admissible into evidence if a proper foundation has been laid to assure the authenticity

and reliability of the recordings. (*People v. Melchor* (1985), 136 Ill. App. 3d 708, 711, 483 N.E.2d 971; *People v. Johnson* (1984), 122 Ill. App. 3d 532, 540, 461 N.E.2d 585; *People v. McCommon* (1979), 79 Ill. App. 3d 853, 866, 399 N.E.2d 224.)"

An adequate foundation is laid when a party to the taped conversation or a person who heard the conversation while it was taking place identifies the voices of the persons in the conversation and testifies that the tape accurately portrays the conversation. (*People v. Williams* (1985), 109 Ill. 2d 327, 487 N.E.2d 613; *People v. Melchor* (1985), 136 Ill. App. 3d 708, 483 N.E.2d 971.) While the court in *Gaurige* concluded that the trial court's exclusion of the tape was error, it was determined not to be reversible error.

■ However, the tape in *Gaurige* was relevant to the issue of defendant's mental state at the time of the incident and did not involve impeachment of a State's witness as to bias. As in *Gaurige*, the trial court in this case also erred in refusing to admit the tape recording. The trial court's brief summary of the conversation significantly diminished the impact the demonstrative evidence would have had on the jury. For such a constitutional error to be harmless, it must be determined that it was harmless beyond a reasonable doubt. *People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526.

Although the tapes impeach Carpenter, they certainly do not impeach the other three occurrence witnesses. While defendant argues, in essence, a conspiracy to create an incident and charge him with the crime, the tapes provide no proof of such a conspiracy. In fact, the dates of the tape recordings as noted by defendant on the cassettes were April and May 1987, well after the incident which is the subject of the trial. Furthermore, the testimony of the State's witnesses is corroborated by the fact defendant had the spark plug wires in his possession when the police confronted him. Therefore, the trial court's refusal to allow the jury to hear the tapes of Carpenter's telephone conversations was harmless beyond a reasonable doubt.

Accordingly, the judgment of the circuit court of Piatt County is affirmed.

Affirmed.

GREEN, P.J., and KNECHT, J., concur.