No. 3--08--0529

(Consolidated with Nos. 3--08--0534 and 3--08--0535)

_____

Filed March 18, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | |
|---|---|
| In re C.H., L.H., and W.H., | ) Appeal from the Circuit Court |
| | ) of the 10th Judicial Circuit, |
| Minors | ) Tazewell County, Illinois, |
| | ) |
| (The People of the State of | ) |
| Illinois, | ) |
| | ) |
| Petitioner-Appellee, | ) Nos. 06--JA--76, 06--JA--77, |
| | ) and 06--JA--78 |
| v. | ) |
| | ) |
| Leah H., | ) Honorable |
| | ) Richard D. McCoy, |
| Respondent-Appellant). | ) Judge, Presiding. |

_____

JUSTICE O'BRIEN delivered the opinion of the court:

_____

Following a permanency review hearing, the court found the respondent, Leah H., unfit to care for her children, C.H., L.H., and W.H. The respondent appeals, arguing, among other things, that the court erred when it admitted recordings of her telephone conversations. We reverse and remand.

FACTS

On August 29, 2006, the State filed separate but identical petitions alleging W.H., a male born February 17, 1998; C.H., a male born September 2, 2001; and L.H., a female born October 15,

2004, were neglected due to an injurious environment (705 ILCS 405/2--3(1)(b) (West 2006)). In the petitions, the State alleged that the respondent and William H., the minors' father,: (1) had a history of unresolved domestic violence issues; (2) had previously been involved in a juvenile case; and (3) continued to exhibit instability and domestic violence issues.

The respondent filed an answer stipulating to the allegations in the neglect petition. Following an adjudicatory hearing, the court found the minors were neglected based on the respondent's stipulation.

The court held the initial dispositional hearing on December 22, 2006. The court found that William was an unfit parent and that the respondent was a fit parent, and it placed custody and guardianship of the children with the respondent. The court ordered the respondent to complete, inter alia, the following tasks: (1) parenting classes; (2) domestic violence classes; (3) counseling to address personal issues; (4) random drug and alcohol tests; and (5) maintain stable housing and income.

On May 10, 2007, the State filed a motion to award the Department of Children and Family Services (DCFS) guardianship of the children and to find the respondent unfit. The State alleged, among other things, that the respondent generally failed to complete her service plan tasks or show measurable progress.

2

The record shows that the court held permanency review hearings in June and December of 2007. In preparation for these hearings, DCFS caseworker Vicky Hoffman filed permanency review reports that generally showed, among other things, that the respondent had not made measurable progress on her service plan tasks. Thus, at each of these hearings, the court determined that the respondent's fitness was "reserved."

In preparation for the next permanency review hearing, Hoffman filed a report on June 26, 2008. Hoffman indicated that the respondent completed parenting and domestic violence classes and was consistently participating in counseling. Further, from January through May 2008, the respondent called on 102 of 104 possible testing days to see whether she needed to perform a random drug test. Hoffman also disclosed that the respondent had been charged with: (1) disorderly conduct; (2) harassment; and (3) stalking, stemming from phone calls she made to Stephanie R., William's girlfriend.

Hoffman also filed an addendum to the permanency review report. It showed that the respondent was "frustrated that [William did] not give her money for the care of his children" and was resentful that William's relationship with Stephanie was "at the expense[] of her children." The respondent allowed Hoffman "to listen to a recorded phone call with [William] in which he was verbally abusive towards [the respondent] by means

of cursing, calling her derogatory and vulgar names, [and] threatening her with losing her children and going to jail."

At the June 28, 2008, permanency review hearing, the State and guardian ad litem recommended that the respondent be adjudicated an unfit parent. Hoffman, however, felt that after years of involvement, the respondent had not shown substantial progress but had done just enough to maintain her fitness.

The State informed the court that the respondent had made "lengthy, ranting, [and] derogatory" phone calls to Stephanie and that Hoffman informed them that the children could be heard in the background during "these rants." The court stated it was not concerned about the telephone calls unless the children were present when they were made, but that in "a couple of these cases where [the court] had people who [were] so vulgar in front of kids that [the court] just remove[d] the kids from them." The court thus asked Hoffman whether she had information that the respondent engaged in "these vulgar -- either conversations or message[s] *** where the kids could hear her," and she answered in the affirmative. The court recessed the hearing to obtain a recording of these calls. Before it did, the respondent stated that "[she] was in [her] room with the door shut when [she] was talking to [William]."

The court allowed the respondent to leave the courtroom while the tapes were played. Before she left, the respondent

4

reiterated that she was in her room with the door closed during the conversations and that the children came into her room. The court played the tapes, which consisted of 11 phone messages and conversations of either only respondent speaking or the respondent and Stephanie speaking. In general, the conversations showed the respondent's frustration because Stephanie refused to give the telephone to William so the respondent could speak to him about their children. During the calls, the respondent was upset and used offensive and, at times, vulgar and threatening language. However, the calls also showed that William was not paying the respondent child support and that she was experiencing car trouble and needed assistance from him to be able to provide the children with a safe and reliable means of transportation. The tapes also showed that a series of calls occurred around 5 a.m. during which the respondent sounded intoxicated. Further, in one call, a child could momentarily be heard in the background. When the child walked in the room, the respondent stopped speaking on the telephone and told the child to leave the room.

After hearing the tapes, the court found that the respondent was an unfit parent. The court found that during some conversations, the respondent was "drunk, high or psychotic" and that "in at least three of these conversations, [the respondent was] out of control exhibiting instability." The court explained

5

that it based the unfitness finding on the respondent's conduct toward the father and Stephanie and because during at least one conversation the children were present. The court also restored William's fitness and gave him custody of the minors. The respondent appealed.

ANALYSIS

The respondent contends that the court erred when it admitted recordings of the telephone conversations and messages into evidence at the June 28, 2008, permanency review hearing.

Section 2--28 of the Juvenile Court Act of 1987 (Act) governs court proceedings that review the original dispositional order, also known as permanency review hearings. 705 ILCS 405/2--28 (West 2006). Hearings pursuant to section 2--28 "are simply further dispositional hearings, conducted in accordance with section 2--22(1) of the Act, which governs how dispositional hearings are to be held." In re S.M., 223 Ill. App. 3d 543, 547, 585 N.E.2d 641, 644 (1992). Thus, the evidentiary rules that apply to the dispositional hearing also apply to subsequent permanency review hearings. S.M., 223 Ill. App. 3d 543, 585 N.E.2d 641.

The legislature gives trial courts wide latitude in considering evidence at the dispositional stage of juvenile wardship proceedings. In re White, 103 Ill. App. 3d 105, 429 N.E.2d 1383 (1982). Specifically, "[a]ll evidence helpful in

6

determining [whether it is in the minor's best interest to be made a ward of the court] may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing." 705 ILCS 405/2--22(1) (West 2006). Thus, at a dispositional hearing, it is within the trial court's discretion to admit and consider evidence that is helpful and relevant to the court's determination of a proper disposition. See White, 103 Ill. App. 3d 105, 429 N.E.2d 1383.

However, even the most relevant evidence must be properly admitted in order to be considered by a trial court. Belfield v. Coop, 8 Ill. 2d 293, 134 N.E.2d 249 (1956). "It is well established in Illinois that sound recordings, which are otherwise competent, material and relevant, are [admissible into] evidence if a proper foundation has been established to assure the authenticity and reliability of the recordings." People v. Melchor, 136 Ill. App. 3d 708, 711, 483 N.E.2d 971, 974 (1985). A party lays a proper foundation when a participant to the conversation or a person who heard the conversation while it was taking place identifies the voices of the people in the conversation and testifies that the tape accurately portrays the conversation. People v. Cochran, 174 Ill. App. 3d 208, 528 N.E.2d 253 (1988). Further, in order to lay a proper foundation for a sound recording, the defendant may not allege the existence

7

of any changes or deletions in the recording.  People v. Johnson, 122 Ill. App. 3d 532, 461 N.E.2d 585 (1984).

The admissibility of evidence is within the sound discretion of the trial court.  In re Kenneth D., 364 Ill. App. 3d 797, 847 N.E.2d 544 (2006).  A reviewing court will not disturb evidentiary determinations absent a clear abuse of that discretion.  In re A.W., 231 Ill. 2d 241, 897 N.E.2d 733 (2008).

Our review of the record reveals that the recordings purported to be of the respondent were not properly admitted by the trial court because they lacked a proper foundation.  Thus, the court abused its discretion in admitting them.

Specifically, neither the respondent nor anyone else testified as to whose voices could be heard on the tapes.  More importantly, no one testified whether the voices of the minors were the voices of the instant minor children.  Additionally, the court did not hear any testimony regarding whether the tapes were altered or if they accurately portrayed the conversations.

We acknowledge that the respondent admitted to calling William.  However, she left the courtroom before the tapes were played, so her admission to making some calls does not sufficiently authenticate the recordings played at the hearing.

In short, after it learned of the existence of some telephone calls between the respondent, William, and Stephanie, the court ordered the State to produce the tapes and play them in

8

open court.  In doing so, however, neither side laid a foundation to authenticate the tapes.  As such, we conclude the tapes were inadmissible.

Furthermore, it appears that the trial court relied solely on the inadmissible tapes to find the respondent unfit.  Our review of the report of proceedings does not show that the court made any oral pronouncements that show it would have ruled in the same manner had it not heard the inadmissible tapes.  Thus, the admission of the inadmissible tapes was not harmless error.  See In re Marriage of Almquist, 299 Ill. App. 3d 732, 704 N.E.2d 68 (1998) (court noted the general principle that the admission of inadmissible evidence is harmless if the State could meet its burden of proof with evidence that was properly admitted).

Because we have determined the court erroneously admitted the recordings, we need not reach the remaining issues presented.  We note in passing that if we were to reach the issue of whether the respondent's counsel was ineffective for failing to object to the admission of the inadmissible tapes, we would find that the counsel's representation would meet both prongs of Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 647, 104 S. Ct. 2052 (1984).  Specifically, counsel's conduct fell below an objective standard of reasonableness because he failed to object to inadmissible evidence.  We believe there was no sound trial strategy for failing to authenticate the tapes before they were

9

played in open court. Additionally, counsel's deficiency prejudiced the respondent because the record shows that the court relied solely on the inadmissible tapes to determine the respondent was an unfit parent.

Based on the foregoing, we reverse the determination of the trial court regarding the admission of the recordings, and we remand the cause for further proceedings consistent with this opinion.

CONCLUSION

The judgment of the circuit court of Tazewell County is reversed and remanded.

Reversed and remanded.

LYTTON, J., concurs.

PRESIDING JUSTICE HOLDRIDGE, dissenting:

The majority holds that the trial court abused its discretion in admitting the recordings at issue because they lacked a proper foundation. The record clearly shows, however, that no objection was made at hearing to the lack of foundation. Thus the issue of proper evidentiary foundation was waived. People v. DeLuna, 334 Ill. App. 3d 1, 19 (2002). A review of the record shows that all parties acknowledged the identities of the individuals who were heard on the tape. In point of fact, no party challenged the admissibility of the recordings due to lack of a proper foundation. Without an objection to foundation, the

10

trial court was within its discretion to find that the recordings were admissible. Greig v. Griffel, 49 Ill. App. 3d 829, 841 (1977) (failure to object to lack of foundation waives all objections to admissibility).

Moreover, not only were the recordings admissible, they were relevant. It was undisputed that the respondent had pending criminal charges stemming from the phone calls she made to Stephanie. The record shows that a child was present and could momentarily be heard during one of those calls. Further, as the trial court determined, the respondent sounded intoxicated during a series of calls made in the early morning hours. Thus, the respondent's conduct during these calls showed signs of an inability to handle her anger, as well as alcohol or drug use to the point of intoxication. This conduct was relevant to the respondent's fitness to be a parent. Because the recordings offered evidence that was helpful and relevant to the respondent's fitness to parent her children, I would find that the court did not abuse its discretion by admitting the recorded telephone calls and messages. I would affirm the ruling of the trial court. I therefore respectfully dissent.

11