# Illinois Official Reports

## Appellate Court

---

### *In re A.S.*, 2014 IL App (3d) 140060

---

| | |
|---|---|
| Appellate Court Caption | *In re* A.S., L.S. and G.S. (The People of the State of Illinois, Petitioner-Appellee, v. Nicole H., Respondent-Appellant). |
| District & No. | Third District<br>Docket Nos. 3-14-0060, 3-14-0061, 3-14-0062 cons. |
| Filed | July 3, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The termination of respondent's parental rights as to her three children was upheld on appeal where the determination that she failed to make reasonable progress toward the return of the children during the relevant nine-month period was not against the manifest weight of the evidence, especially when she maintained during the majority of that time a relationship with a man her caseworkers told her to avoid; furthermore, her progress was properly measured during the nine-month period following the adjudication of neglect as to her youngest child, there was no error in the admission of her medical records, and the trial court properly refused to admit evidence of drug drops she completed after the expiration of the nine-month period. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, Nos. 10-JA-219, 10-JA-220, 11-JA-218; the Hon. Christopher L. Fredericksen and the Hon. Kirk D. Schoenbein, Judges, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Louis P. Milot, of Peoria, for appellant.

Jerry Brady, State's Attorney, of Peoria (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justices O'Brien and Schmidt concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent is the mother of L.S., A.S. and G.S. In October 2010, the court adjudicated L.S. and A.S. neglected minors. In August 2011, respondent gave birth to G.S., who was adjudicated a neglected minor on December 21, 2011. The State filed a petition for termination of respondent's parental rights, alleging that respondent was unfit for failing to make reasonable progress toward the return of her children during the nine-month period of December 21, 2011, to September 21, 2012. Following a hearing, the trial court found respondent unfit. We affirm.

¶ 2    In August 2010, the State filed a petition alleging that L.S. and A.S. were neglected minors in that their environment was injurious to their welfare because (1) their parents were using methamphetamines in the home, (2) their home was in "disarray with debris and clothing throughout the floors making it difficult to walk through," and (3) their parents failed to complete drug drops ordered by the Department of Children and Family Services (DCFS). On October 25, 2010, the court ruled that the allegations of the petition were proven and that L.S. and A.S. were neglected. On November 22, 2010, the court found respondent unfit based on the allegations contained in the petition and "drug issues." At that time, the court entered an order requiring respondent to "perform the following tasks IN ORDER TO CORRECT THE CONDITIONS THAT LED TO THE ADJUDICATION AND/OR REMOVAL OF THE CHILDREN: *** [p]erform random drug drops 2 times per month[;] [s]ubmit to a psychological examination *** and follow the recommendations made[;] [p]articipate and successfully complete counseling[;] [p]articipate and successfully complete a parenting course ***[;] obtain and maintain stable housing ***[;] [v]isit as scheduled with your child(ren)[; and] *** cooperate with Human Service Center."

¶ 3    On August 2, 2011, respondent gave birth to G.S. One month later, the State filed a petition alleging that G.S. was neglected in that her environment was injurious to her welfare because (1) respondent had been previously found unfit and there was no subsequent finding of fitness, (2) respondent had not completed services that would result in the return home of her other children or a finding of fitness, (3) she was hospitalized for at least three weeks after her birth in order to detox from methadone, and (4) her parents both have substance abuse problems.

¶ 4 On December 21, 2011, the trial court found that G.S. was a neglected minor. On February 15, 2012, the court ruled that respondent remained unfit due to "erratic behavior, drug usage" and her continuing relationship and cohabitation with the minors' father, Aaron S. At that time, the court entered an order requiring respondent to complete certain tasks "IN ORDER TO CORRECT THE CONDITIONS THAT LED TO THE ADJUDICATION AND/OR REMOVAL OF THE CHILDREN." The tasks were the same as those contained in the court's November 22, 2011 order with one addition: that respondent use her best efforts to obtain and maintain a legal source of income. At a permanence review hearing in June 2012, the trial court found that respondent failed to make reasonable efforts to achieve the service plan and permanency goal because although she was participating in services, she was living with and condoning Aaron S.'s "irrational actions."

¶ 5 In December 2012, the State filed a petition for termination of parental rights against respondent. The petition alleged that respondent is an unfit person in that she failed to make reasonable progress toward the return of L.S. and A.S. during the nine-month period of December 21, 2011, to September 21, 2012, and failed to make reasonable progress toward the return of G.S. within nine months after she was adjudicated a neglected minor on December 21, 2011.

¶ 6 At the hearing on the petition, Danny Walker testified that he was the children's caseworker from 2010 until April 2012. In April 2012, respondent was receiving counseling and methadone treatment and was participating in random drug testing. The drug tests were positive for methadone and benzodiazepines, for which she had prescriptions. She was regularly visiting her children and became employed. Walker advised respondent that she would be considered noncompliant with the court's orders if she was living with Aaron S. and he was not complying with the court's orders and recommendations.

¶ 7 Maria McCrea testified that she is a caseworker supervisor and supervised the caseworkers for A.S., L.S. and G.S. until 2013. In August 2012, respondent told her caseworker, Melody Cannon, that she asked Aaron S. to move out of her home, and he moved out shortly after that. From April to September 2012, respondent was late for one drug drop in June, missed one drop in July, completed both drops in August but did not perform any drops after August 21, 2012. Respondent's attendance at visits with her children was good.

¶ 8 Hasenstein testified that he works for the Human Service Center. He was respondent's recovery specialist/counselor for approximately three years, including December 2011 and September 2012. He testified that respondent "complied with all aspects of treatment" and successfully completed her treatment in August 2012.

¶ 9 Respondent testified that she was familiar with the services she had to complete in order to be reunified with her children. As ordered, she underwent a psychological examination, completed a parenting class, obtained stable housing and employment, attended all of her visits with her children, and completed counseling with Hasenstein. She also participated in counseling sessions with Irene Kasambria from December 2011 to September 2012. She testified that she missed a few drug drops when she was sick but said those were excused by her caseworkers, Walker and Cannon. Respondent testified that Aaron S. lived with her from December 2011 to July 2012. After he moved out, she discontinued her relationship with him.

¶ 10 The State sought to introduce into evidence respondent's certified medical records from Human Service Center and certified records from Proctor First Care showing the results of her drug drops. Respondent objected. The trial court allowed the records to be admitted. The

- 3 -

Proctor First Care documents showed that respondent completed 14 out of the 18 required drug drops during the relevant 9-month period, with her last drop completed on August 21, 2012. The Human Service Center records showed that respondent "did not show" for psychiatric appointments with Kasambria on January 16, 2012, February 10, 2012, February 17, 2012, March 12, 2012, July 9, 2012, July 16, 2012, and August 20, 2012. A record completed by Hasenstein showed that respondent's enrollment in the methadone program ended on September 16, 2012, "against medical advice." That same record indicated that respondent "struggled to attend individual sessions, and was sporadic with her group participation" but, nevertheless, "was successful with her treatment in regards to this program." A letter from Hasenstein, dated November 13, 2012, indicated that respondent met with him "on a sporadic basis, last attending an individual session on 8/8/12." After that, respondent chose to voluntarily leave the program.

¶ 11 Respondent sought to introduce evidence that she completed drug drops after September 21, 2012. The State objected. The court ruled that such evidence was irrelevant because it was outside the relevant nine-month period.

¶ 12 At the conclusion of the hearing, the trial court found that the State had met its burden of proving that respondent failed to make reasonable progress toward the return of her children from December 21, 2011 to September 21, 2012, because respondent (1) continued to reside and have a relationship with Aaron S. for a "substantial portion" of the nine-month period even though she knew that "this relationship was toxic at least in the Court's eyes," (2) failed to complete 4 out of 18 drug drops during the period, and (3) did not successfully complete counseling from the Human Service Center. The court concluded that respondent's conduct "does not arise [*sic*] to reasonable progress."

¶ 13                                                    I

¶ 14 Respondent first argues that the trial court's order finding her unfit was against the manifest weight of the evidence.

¶ 15 A trial court's finding of unfitness is afforded great deference because the trial court has the best opportunity to view and evaluate the parties and their testimony. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064 (2006). The trial court's finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id*. A decision is against the manifest weight of the evidence where the opposite result is clearly evident from the record. *Id*.

¶ 16 Section 1(D)(m) of the Adoption Act (Act) provides that a parent is unfit for failing "(ii) to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor ***, or (iii) to make reasonable progress toward the return of the child to the parent during any 9-month period after the end of the initial 9-month period following the adjudication of neglected or abused minor." 750 ILCS 50/1(D)(m)(ii)-(iii) (West 2012). The section further states that " 'failure to make reasonable progress toward the return of the child to the parent' includes (I) the parent's failure to *** correct the conditions that brought the child into care within 9 months after the adjudication *** and (II) the parent's failure to *** correct the conditions that brought the child into care during any 9-month period after the end of the initial 9-month period following the adjudication." 750 ILCS 50/1(D)(m) (West 2012).

¶ 17    Reasonable progress is judged by an objective standard measured from the conditions existing at the time custody was taken from the parent. *Daphnie E.*, 368 Ill. App. 3d at 1067. " 'Reasonable progress' requires, at a minimum, measurable or demonstrable movement toward the goal of return of the child, but whatever amount of progress exists must be determined with proper regard for the best interests of the child." *In re M.S.*, 210 Ill. App. 3d 1085, 1093-94 (1991). "[T]he benchmark for measuring a parent's 'progress toward the return of the child' under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001). Reasonable progress exists when the trial court can conclude that it will be able to order the child returned to parental custody in the near future. *Daphnie E.*, 368 Ill. App. 3d at 1067.

¶ 18    Here, the trial court found that respondent failed to make reasonable progress toward the return of A.S., L.S. and G.S. from December 21, 2011 to September 21, 2012. During that period, respondent was completing some of the court-ordered tasks, including visiting her children as scheduled, maintaining stable housing, and obtaining and maintaining employment. However, she was not successfully completing other tasks, such as counseling and psychiatric sessions, which she attended only sporadically and discontinued altogether in August 2012. Respondent also missed several drug drops during that period. Finally, for the vast majority of the nine-month period, respondent continued to reside and have a relationship with Aaron S. even though the court and her caseworker had informed her that continuing a relationship with him could prevent her from becoming fit.

¶ 19    Based on the evidence presented, the trial court's determination that respondent failed to make reasonable progress toward the return of her children during the relevant nine-month period was not against the manifest weight of the evidence.

¶ 20                                                    II

¶ 21    Respondent alternatively argues that even if there was sufficient evidence to find her unfit with respect to L.S. and A.S., the court erred in finding her unfit with respect to G.S. because the nine-month period should have started when the court entered its order requiring her to complete certain tasks, not when G.S. was adjudicated neglected.

¶ 22    Our primary objective in construing a statute is to give effect to the intention of the legislature. *In re J.L.*, 236 Ill. 2d 329, 339 (2010). The most reliable indicator of the legislature's intent is the language of the statute, which must be given its plain and ordinary meaning. *Id.* Where the language is clear and unambiguous, it will be given effect without resort to other aids of construction. *Id.* We may not depart from a statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express. *Id.*

¶ 23    The "clear and unambiguous" language of section 1(D)(m)(ii) of the Adoption Act provides that the relevant nine-month period used to determine if a parent has made "reasonable progress toward the return of the child" begins on the date the court enters its adjudication of neglect, abuse or dependency. *In re D.F.*, 208 Ill. 2d 223, 239 (2003). Illinois courts, including our supreme court, have consistently rejected attempts to lengthen or toll the nine-month period set forth in section 1(D)(m)(ii). See *id.* (nine-month period begins on date of adjudication order, not dispositional order); see also *In re Cheyenne S.*, 351 Ill. App. 3d

1042, 1049-50 (2004) (nine-month period is not tolled while parent has custody of children). A trial court may consider a parent's lack of progress during the statutory nine-month period even if a service plan was not yet in place. See *In re Tiffany M.*, 353 Ill. App. 3d 883, 890 (2004) (court considered father's positive tests for cocaine occurring prior to issuance of father's service plan).

¶ 24 A reading of section 1(D)(m) that would lengthen the period of time in which a parent can demonstrate reasonable progress would contradict the plain language of the Act, as well as its policy and purpose. See 750 ILCS 50/20a (West 2012); *D.F.*, 208 Ill. 2d at 241. Section 20a of the Adoption Act states: "It is in the best interests of persons to be adopted that this Act be construed and interpreted so as not to result in extending time limits beyond those set forth herein." 750 ILCS 50/20a (West 2012). Through the Adoption Act and Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2012)), the legislature has expressed a policy of bringing juvenile court proceedings to an expeditious conclusion, securing permanency for minors " 'at the earliest opportunity,' " and determining the best interests of minors in a " 'just and speedy manner.' " *D.F.*, 208 Ill. 2d at 231, 241 (quoting 705 ILCS 405/1-2(1), 2-14(a) (West 2000)). Giving parents a " 'free pass' " until a date after a court's adjudication of neglect would be contrary to the legislature's purpose of expediting juvenile court proceedings and seeking permanency for children as quickly as possible. *Id.*

¶ 25 Here, G.S. was adjudicated neglected on December 21, 2011. At that time, a court order was in place requiring respondent to complete certain tasks in order to correct the conditions that led to A.S. and L.S. being adjudicated neglected. On February 15, 2012, a court order was entered requiring respondent to complete the same tasks with respect to G.S. Since the tasks respondent was required to complete for A.S., L.S. and G.S. were the same, respondent was not prejudiced by the court's delay in providing her court-ordered tasks related to G.S. We find no reason to depart from the plain language of the statute and hold that the trial court properly measured respondent's progress during the nine-month period following G.S.'s adjudication of neglect.

¶ 26                                                    III

¶ 27 Respondent also argues that the trial court erred in admitting her medical records into evidence and refusing to admit evidence that she completed drug drops after September 21, 2012.

¶ 28 The admissibility of evidence is within the sound discretion of the trial court. *In re C.H.*, 398 Ill. App. 3d 603, 607 (2010). A reviewing court will not disturb evidentiary determinations absent a clear abuse of discretion. *Id.*

¶ 29                                                    A

¶ 30 Respondent argues that records of her drug drops from Proctor First Care and her counseling records from Human Service Center are hearsay and inadmissible under the Juvenile Court Act.

¶ 31 Section 2-18(4)(a) of the Juvenile Court Act provides, in pertinent part: "Any writing, record *** made as a memorandum or record of any condition *** relating to a minor in an abuse, neglect or dependency proceeding, shall be admissible in evidence as proof of that condition *** if the court finds that the document was made in the regular course of the

business of the hospital or agency and that it was in the regular course of such business to make it ***." 705 ILCS 405/2-18(4)(a) (West 2012). At a fitness hearing, a trial court may admit the health care records of the respondent of a termination petition, pursuant to section 2-18(4)(a) of the Juvenile Court Act. *In re Precious W.*, 333 Ill. App. 3d 893, 900 (2002); *M.S.*, 210 Ill. App. 3d at 1095.

¶ 32    Here, respondent's health care records were admissible under section 2-18(4)(a) of the Juvenile Court Act. The trial court did not err in admitting those records.

¶ 33                                                                B

¶ 34    Finally, respondent argues that the trial court erred in refusing to admit evidence that she completed drug drops after September 21, 2012.

¶ 35    In determining whether a parent has made reasonable progress toward the return of a child, courts may consider evidence occurring only during the relevant nine-month period mandated in section 1(D)(m) of the Adoption Act. *J.L.*, 236 Ill. 2d at 341. A court is not permitted to consider any evidence outside the nine-month period. *D.F.*, 208 Ill. 2d at 242-43.

¶ 36    Here, the nine-month period set forth in the termination petition ended on September 21, 2012. The trial court could not consider any evidence occurring after that. The trial court properly ruled that respondent's evidence of drug drops occurring after the nine-month period was inadmissible.

¶ 37    The judgment of the circuit court of Peoria County is affirmed.

¶ 38    Affirmed.