FIRST DIVISION

No. 1-08-1671

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| RAMA CARTER, | ) | Honorable |
| | ) | Arthur F. Hill, Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

JUSTICE LAMPKIN delivered the opinion of the court:

Following a jury trial, defendant Rama Carter was convicted of indecent solicitation of a child and sentenced to two years of sex offender probation. On appeal, defendant contends that: (1) the trial court committed reversible error when it failed to instruct the jury on two essential elements, *i.e.*, defendant's specific intent to commit the offense and knowledge that the victim was less than 17 years old; (2) the State misstated the evidence during closing argument; and (3) defendant received ineffective assistance from counsel. For the reasons that follow, we affirm defendant's conviction.

## I. BACKGROUND

Defendant was tried before a jury on charges of indecent solicitation of a child and aggravated criminal sexual abuse for allegedly soliciting and engaging in oral sex with a 13-year-

old boy named T.W. in March 2005.

When the trial commenced in 2008, the State introduced into evidence a photograph of T.W. taken in 2005. T.W. testified that in March of 2005 he was 13 years old and living with his grandparents. While home alone on the evening of March 5, 2005, he telephoned a party line, as he had done on several prior occasions. A man on the party line asked T.W. his age, and T.W. said he was 13 years old. The man began talking about sex and said he wanted T.W. "to see his dick," but T.W. tried to change the subject. When the man asked for T.W.'s home telephone number and address, T.W. gave him the information. Shortly thereafter, at 6:39 p.m., the man telephoned T.W. at home and said he was getting out of the shower. Then, at 6:57 p.m., the man telephoned T.W. again and said he was outside T.W.'s house. T.W. opened his front door and saw defendant, who was about 6 feet 2 inches tall and weighed about 250 pounds.

T.W. and defendant went to an upstairs room, where defendant pulled down his pants, pushed T.W.'s head to defendant's penis, and told T.W. to "suck it." Defendant reached under T.W.'s clothes and touched T.W.'s buttocks while T.W. performed oral sex on defendant. This lasted for about five minutes until T.W.'s grandmother, Patricia Payne, opened the door to the room. T.W. could not see Payne because he had "backed up close to behind the door." Defendant, however, was standing in Payne's view with his pants on the floor and his penis erect. Payne closed the door and ran downstairs. Defendant then pulled up his pants and also ran downstairs. T.W. remained in the room and could hear voices yelling from the floor below.

The police arrived at T.W.'s home about 10 minutes after defendant left, but T.W. did not tell the police the truth about the offense because he was embarrassed. About four hours later,

T.W. was taken to the hospital, examined, and told the hospital staff that the offender made him perform oral sex. Thereafter, T.W. spoke to a detective and said defendant came to T.W.'s home to inquire about having his taxes done.

In April 2005, the police showed T.W. a photographic array of suspects, and T.W. identified defendant as the offender from his photograph. Later on the same evening, T.W. identified defendant as the offender from a lineup conducted at the police station. T.W. also identified a photograph of defendant's car as the car defendant drove to T.W.'s home on the evening of the offense. When T.W. spoke to Chicago police detective Docherty and Assistant State's Attorney (ASA) Jennifer Linn in April 2005, he told them what had happened back on March 5, 2005. T.W. explained that he never told his grandparents about what had happened in the upstairs room because he was embarrassed and ashamed and was raised with a religious background.

Patricia Payne, T.W.'s grandmother, testified that she was employed as a tax advisor. She thought T.W. was 10 years old at the time of the offense but did not remember exactly. She, her husband, and her son had been car shopping and returned home shortly before 7 p.m. As she approached her house, she noticed through an upstairs window that a large person wearing a red jacket was standing and making motions with his hands. Payne, who thought T.W. had disobeyed her instructions by having visitors, went inside the house and called for T.W. She received no response, walked upstairs, and opened the door. She saw defendant standing, unclothed from his waist down, with his penis erect. T.W. was on the other side of the opened door. Payne ran downstairs and told her husband what she had seen. Defendant came

downstairs, was confronted by Payne's husband and son, and said that he "just came to give him some weed." Defendant had trouble opening the door, but eventually exited the house, followed by Payne's husband and son. Defendant got in his car and then drove backwards down the one-way street. Meanwhile, Payne called the police. When T.W. came downstairs, he was fully clothed and did not look upset. Payne was very upset and started yelling at T.W. and questioning him, but he would not say anything to her. Payne identified defendant as the offender from both a photographic array and a lineup.

Chicago police officer Steven Davis testified that he arrived at Payne's house at 7:10 p.m. on the evening of the offense and interviewed Payne, T.W., and other family members. Officer Davis obtained a description of defendant and his car.

Detective Docherty testified that he was assigned to investigate the sexual assault allegation at about 10 p.m. He went to the hospital and spoke to T.W., who said that defendant came to the house to inquire about taxes. During that interview, T.W. did not mention any sexual activity between himself and defendant. Detective Docherty then went to Payne's house and spoke to her, her husband, and her son. About one month later, the police located defendant's car and arrested him. At the time of his arrest, defendant attempted to punch the officers and flee. He also had 10 individually packaged bags of marijuana in his possession. When Detective Docherty and ASA Linn spoke to T.W. in April 2005, he told them, consistent with his trial testimony, about meeting defendant on a party line, their telephone conversation, and what happened at Payne's house.

Lasheena Johnson testified for the defense. She met defendant in 2005 on a telephone dating service, and they had a brief dating relationship. She explained how the service worked, noting that a recorded announcement informed callers that they must be at least 18 years old to use the service.

Defendant testified that he was 34 years old and employed. On the evening in question, he went to Payne's home to sell marijuana, and his encounter with T.W. did not involve anything sexual. Specifically, defendant heard a message on a dating service from a caller who was looking to buy "weed." Defendant, who had been selling marijuana sporadically for a couple of years, contacted the caller (T.W.) directly and arranged to deliver a bag of marijuana to his home for $20. They did not talk about sex, and defendant assumed that T.W. was at least 18 years old based on the dating service's minimum age requirement. Defendant said he telephoned T.W. twice regarding his arrival.

When T.W. opened the front door of his home, defendant thought T.W. looked "kind of young." According to defendant, he sold marijuana only to adults, whom he defined as people 18 years of age or older, and thought that T.W. looked "younger than [defendant] anticipated." Defendant asked T.W. if the marijuana was for him, and T.W. responded that it was for his cousin. T.W. examined the marijuana for its quality, gave defendant a folded bill, and tried to close the door. Defendant realized that the bill was only $10, so he pushed the door open and followed T.W. upstairs. Defendant retrieved his bag of marijuana from T.W. but heard someone calling from downstairs. Defendant went downstairs and passed Payne, saying he "was just trying to get [his] weed back." Defendant was "a little bit nervous because [he] just, you know,

5

tried to give some weed to a min[o]r, so [he] got in [his] car and left."

The jury found defendant guilty of indecent solicitation of a child but acquitted him of aggravated criminal sexual abuse. Defendant was sentenced to two years of sex offender probation. Defendant appealed.

## II. ANALYSIS

### A. Erroneous Jury Instructions

Defendant argues his conviction of indecent solicitation of a child must be reversed and this case remanded for a new trial because the jury was given outdated jury instructions that omitted two elements of the offense: (1) that defendant intended to commit aggravated criminal sexual abuse; and (2) that he knew T.W. was under 17 years of age.

Concerning the offense of indecent solicitation of a child, the trial court gave the jury the following instruction:

"A person of the age of 17 years or older commits the offense of indecent solicitation of a child when he solicits a child under the age of 17 years to do any act which if done would be aggravated criminal sexual abuse.

The words solicit or solicitation mean to command, authorize, urge, incite, request, or advise.

To sustain the charge of indecent solicitation of a child, the State must prove the following propositions:

First: That the defendant solicited a child under the age of 17 years to do any act which if done would be aggravated criminal sexual abuse.

6

And, second: That the defendant was then 17 years of age or older.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

The trial court also instructed the jury, in pertinent part:

"A person commits the offense of aggravated criminal sexual abuse when he is 17 years of age or older and commits an act of sexual penetration with a victim who is at least 13 years of age but under 17 years of age when the act is committed.

To sustain the charge of aggravated criminal sexual abuse, the State must prove the following propositions:

First, that the defendant committed an act of sexual penetration with [T.W.].

Second: that [T.W.] was at least 13 years of age and under 17 years of age when the act was committed.

And third: That the defendant was at least five years older than [T.W.].

* * *

The term sexual penetration means any contact, however slight, between a sex organ of one person and the mouth of another person."

We agree with defendant that the instruction was outdated and defective because it failed to instruct the jury about the two mental states that were clearly set forth as elements of the offense of indecent solicitation of a child when the statute was amended in 1999. Prior to July 22, 1999, section 11-6(a) of the Criminal Code of 1961 (Code) provided, in pertinent part, that a person 17 years old or older commits indecent solicitation of a child if he solicits a child under the age of 13 to do any act which if done would be aggravated criminal sexual abuse. 720 ILCS 5/11-6(a), 12-16(d) (West 1998). Furthermore, whether the defendant reasonably believed the child to be of the age of 13 years and upwards was not a defense. 720 ILCS 5/11-6(b) (West 1998).

However, at the time of defendant's 2008 trial for the 2005 offense, the 1999 amended version of section 11-6 of the Code was in effect. That version of section 11-6 provided, in pertinent part, that the offense of indecent solicitation of a child is committed if a person 17 years old or older, with the intent that the offense of aggravated criminal sexual abuse be committed, knowingly solicits a child or one whom he believes to be a child to perform an act of sexual penetration or sexual conduct. 720 ILCS 5/11-6(a), 12-16(d) (West 2000). Both the 1999 and current[1] versions of section 11-6 define a child as a person under 17 years of age. 720 ILCS

[1] Although not relevant to this appeal, amendments to section 11-6 by Public Act 95-143, section 5, effective January 1, 2008 (720 ILCS 5/11-6 (West 2008)), added subsections concerning a person knowingly discussing an act of sexual conduct or sexual penetration with a

1-08-1671

5/11-6(b) (West 2008).

The 1999 amendment to section 11-6 of the Code enhanced the various penalties for violating the statute and expanded the age of protected children from under 13 years of age to any child under 17 years of age. The 1999 amendment also added two mental states as elements of the offense: (1) the defendant must intend to commit one of the sex offenses identified in the statute, such as aggravated criminal sexual abuse; and (2) the defendant must know or believe the victim to be under 17 years of age. Here, the jury was not given instructions that were appropriate for section 11-6 of Code after July 22, 1999. Specifically, the jury was not properly instructed, in accordance with the then-effective version of section 11-6 of the Code, to find that defendant acted with the intent to commit aggravated criminal sexual abuse and knew or believed T.W. was under 17 years old.

The State concedes that the jury received erroneous instructions but argues defendant forfeited this issue on review by failing to object at trial or in a posttrial motion.

The plain error doctrine, however, allows errors not previously challenged to be considered on appeal if either: (1) the evidence is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence; or (2) the error is so fundamental and of such magnitude that the defendant is denied the right to a fair trial and the error must be

child by means of the Internet. Furthermore, a proposed amendment to section 11-6 seeks to add a subsection concerning a person knowingly using any device capable of electronic data storage or transmission and misrepresenting his age to the child. 96th Ill. Gen. Assem., House Bill 1317, 2009 Sess.

remedied to preserve the integrity of the judicial process. People v. Hudson, 228 Ill. 2d 181, 191 (2008); People v. Herron, 215 Ill. 2d 167, 178-79 (2005). Under a plain error analysis, which applies where the defendant has failed to make a timely objection, the defendant bears the burden of showing that the error was prejudicial. Herron, 215 Ill. 2d at 182.

Concerning the first prong of plain error analysis, the evidence in this case was not closely balanced and clearly established defendant's intent to commit the charged aggravated criminal sexual abuse offense and his knowledge that T.W. was under 17 years old.

The evidence on the issue of defendant's intent was overwhelming. "Because intent is a state of mind, it can rarely be proved by direct evidence" but can be shown by surrounding circumstances. People v. Williams, 165 Ill. 2d 51, 64 (1995). T.W. testified that during their telephone conversation, defendant talked about sex, said he wanted T.W. to "see his dick," obtained T.W.'s telephone number and address and then promptly drove to T.W.'s home. The undisputed facts established that defendant and T.W., who did not know each other before the evening in question, were alone together in an upstairs room of Payne's house with the door closed. T.W. testified that defendant pulled down his pants, pushed T.W.'s head toward defendant's penis, and told T.W. to "suck it." Furthermore, Payne and T.W. testified consistently that when Payne opened the door, defendant was standing, unclothed from his waist down, with an erect penis before T.W., who was shielded from Payne's view by the door. Conversely, defendant testified that he was shortchanged $10 after providing home-delivery marijuana service to a customer lead obtained from a telephone dating service. According to defendant, he then forced his way into the unknown house and entered the upstairs room merely to retrieve his

marijuana from T.W. and no sexual activity transpired. The jury found defendant's version of the events incredible, and "[w]e would be remiss, on these facts, to hold the conviction should be reversed." People v. Jones, 81 Ill. 2d 1, 10 (1979).

Defendant argues that the evidence concerning his intent was not overwhelming because the jury's acquittal on the greater charge of aggravated criminal sexual abuse indicated that it did not fully credit T.W.'s testimony. Defendant's argument is not persuasive. That acquittal indicates the jury decided the State had not proved beyond a reasonable doubt that sexual penetration occurred. Specifically, even though T.W. testified that he performed fellatio on defendant, Payne's testimony indicated that she did not see any contact between defendant's penis and T.W.'s mouth. The fact that the jury acquitted defendant of aggravated criminal sexual abuse provides no reason to conclude the jury thought the State failed to prove defendant intended to commit an act of sexual penetration with T.W.

Furthermore, the evidence that defendant knew T.W. was under 17 years of age at the time of the offense was overwhelming. T.W. testified that, during his first telephone conversation with defendant, defendant asked him his age, and he responded that he was 13 years old. In addition, the State submitted into evidence a 2005 photograph of a very youthful-looking T.W., whom even defense counsel described, based on that photograph, as "55 pounds soaking wet" and one-fifth of defendant's size. Moreover, even according to defendant's drug-sale version of the events, he admitted that T.W. looked so "young" that defendant was nervous when he left Payne's house because he had just "tried to give some weed to a min[o]r." There was no question here concerning defendant's knowledge that T.W. was under 17 years of age.

11

Regarding the second, fair trial, prong of plain error analysis, "even an incorrect instruction on an element of the offense is not necessarily reversible error." People v. Hopp, 209 Ill. 2d 1, 10 (2004). See also Jones, 81 Ill. 2d at 10 (erroneous instruction on the intent element of attempted murder was harmless where the defendant's intent to kill was "blatantly evident" from the evidence); People v. Leger, 149 Ill. 2d 355, 404 (1992) (no prejudice to the defendant, in the context of an ineffective assistance of counsel claim, when jury instructions contained the incorrect statement of intent because "substantial evidence was presented to show that defendant acted with intent to kill").

In this case, neither the issue of whether defendant sufficiently formed the intent that the offense of aggravated criminal sexual abuse be committed, nor the issue of whether defendant knew T.W. was less than 17 years old was highly questionable. The essential disputed issue in this case was the credibility of T.W. and Payne's version of the events as opposed to defendant's version. If the jury believed the testimony of T.W. and Payne, then defendant's intent to commit the charged offense and his knowledge that T.W. was a child were clearly evident from the circumstances. Those circumstances were that an adult, male stranger was caught in the act of standing before a child, who was home alone, while the man's pants were down around his ankles and his penis was erect. See People v. Deavers, 220 Ill. App. 3d 1057, 1075 (1991) (an adult sexually aroused in the presence of a child is "strongly probative and suggestive of the [offender's] state of mind"). Because the overwhelming evidence convinced the jury to believe Payne and T.W.'s version of the events, defendant's formation of the intent to commit the act of sexual penetration and knowledge of T.W.'s age were not disputed issues essential to the

determination of defendant's guilt or innocence.

Consequently, defendant has not shown that the erroneous jury instruction caused a severe threat to the fairness of his trial. We conclude that the error in the jury instruction here was harmless.

### B. Closing Argument

Defendant contends the State misstated evidence during closing argument. According to the record, the State argued that in order to believe defendant's testimony, the jury would have to discount everything Payne said had happened. The prosecutor continued:

> "[Payne] told the police officers that came to her house about what she had seen. She described that person. She told the detective what she had seen. So what is it then? Why in the world would Patricia Payne concoct that story right on the spot against someone she doesn't even know, never saw him before."

Based on those remarks, defendant complains that the State improperly argued that Payne had made prior statements which corroborated her trial testimony despite the fact that no one testified at trial about what Payne told the police. Defendant concedes that he failed to preserve this issue for review but urges us to review the matter as plain error.

The challenged remarks were vague; although the State argued that Payne told investigators "about what she had seen," the State did not specify what Payne said she saw. Nevertheless, the gist of the State's remarks seemed to be that, given the course of the police investigation, the jury could reasonably infer Payne told the police that when she saw defendant alone in the upstairs room with T.W., defendant was half-naked and his penis was erect. Even

1-08-1671

though the State should not have argued the inference (see People v. Hooper, 133 Ill. 2d 469, 493 (1989) (prior consistent statements are generally not admissible to bolster a witness's credibility)), on this record the State's comments did not result in substantial prejudice to defendant.

The jury was aware that the police interviewed Payne at the scene. Moreover, the jury knew that the police took T.W., who initially did not report any sexual activity with defendant, to the hospital later that evening and Detective Docherty was assigned to investigate the case as a sexual assault. From that evidence, the jury might already have inferred that the police investigated this matter as a sex offense because Payne had told them at the scene that, consistent with her trial testimony, she saw defendant half-naked and with an erect penis. See Hooper, 133 Ill. 2d at 493-94 (improper prosecutorial references to a witness's prior consistent statements were not prejudicial where the jurors might have inferred from other evidence that the statements were not inconsistent).

Furthermore, as discussed in detail above, the evidence of defendant's guilt was not close. We conclude that the State's improper remark during closing argument was harmless.

### C. Ineffective Assistance of Counsel

Finally, defendant argues that trial counsel provided ineffective assistance by not remedying the faulty jury instructions for the offense of indecent solicitation of a child, and also by not objecting when the State told the jury that Payne's trial testimony was consistent with her statements to investigators.

To obtain relief, defendant must establish not only that his lawyer furnished objectively

14

1-08-1671

deficient assistance, but also that the lawyer's shortcomings prejudiced the outcome of the case. Strickland v. Washington, 466 U.S. 668, 687-89, 80 L. Ed. 2d 674, 693-94, 104 S. Ct. 2052, 2064-65 (1984); People v. Albanese, 104 Ill. 2d 504, 525-27 (1984). As already discussed above, neither the jury instructions nor the State's improper argument caused defendant any prejudice. Consequently, defendant cannot successfully argue now that his lawyer was deficient for not challenging those errors.

### III. CONCLUSION

Based on the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

HOFFMAN and PATTI, JJ., concur.

15

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

RAMA CARTER,

Defendant-Appellant.

No. 1-08-1671

Appellate Court of Illinois
First District, FIRST DIVISION

November 1, 2010

Justice Bertina E. Lampkin authored the opinion of the court:

Justice Hoffman and Justice Patti concur.

Appeal from the Circuit Court of Cook County.
The Hon. Arthur F. Hill, Jr., Judge Presiding.

**COUNSEL FOR APPELLANT**
Michael J. Pelletier, State Appellate Defender, Chicago, IL 60601
Patricia Unsinn, Deputy Defender
OF COUNSEL: Patrick F. Cassidy

**COUNSEL FOR APPELLEE**
Anita Alvarez, Cook County State's Attorney, Chicago, IL 60602
OF COUNSEL: Alan J. Spellberg and Anthony M. O'Brien

1-08-1671