# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Rexroad*, **2013 IL App (4th) 110981**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CALVIN REXROAD, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-0981 |
| Filed | March 28, 2013 |
| Modified upon denial of rehearing | June 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution arising from text messages defendant sent to a detective posing as a 15-year-old girl, defendant's conviction for indecent solicitation of a child was upheld over his contentions that the jury was given incomplete and misleading instructions, that his communications were constitutionally protected, and that the police induced his actions by outrageous conduct, since, *inter alia*, defendant failed to object or offer alternative instructions, the evidence against defendant was overwhelming, and the incorrect instructions had no effect on the verdict; however, the cause was remanded for vacation of improperly imposed fines and the imposition of mandatory fines applicable to defendant. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 11-CF-869; the Hon. Harry E. Clem, Judge, presiding. |
| Judgment | Affirmed in part; cause remanded with directions. |

Counsel on
Appeal

Michael J. Pelletier, Karen Munoz, and Colleen Morgan, all of State Appellate Defender's Office, of Springfield, for appellant.

Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, Robert J. Biderman, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion.

Justices Turner and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1 In August 2011, a jury convicted defendant, Calvin Rexroad, of indecent solicitation of a child (720 ILCS 5/11-6(a) (West 2010)). The trial court sentenced defendant to eight years' imprisonment. Defendant appeals, arguing the following: (1) his conviction for indecent solicitation of a child must be reversed and the case remanded for a new trial because the jury was given incomplete and misleading jury instructions, which omitted one mental state element of the offense and misstated the other; (2) his conviction must be reversed because the State did not prove he committed a crime because (a) there was not a victim, (b) his conversation with the police officer impersonating the 15-year-old girl was constitutionally protected, and (c) his presence at the meeting place was only induced by police conduct so outrageous it violated due process; and (3) the circuit clerk improperly imposed at least one fine and failed to apply his presentence-custody credit. We affirm defendant's conviction but remand for the trial court to vacate fines improperly imposed by the circuit clerk and reimpose those fines where appropriate.

¶ 2 I. BACKGROUND

¶ 3 On May 31, 2011, the State charged defendant by information with indecent solicitation of a child (720 ILCS 5/11-6(a) (West 2010)) (count I) and solicitation to meet a child (720 ILCS 5/11-6.6(a) (West 2010)) (count II), an offense for which defendant was extended-term eligible.

¶ 4 On August 24, 2011, defendant made an oral motion *in limine* with regard to a lone conversation between Detective Robb Morris and defendant. According to defense counsel:

"Judge, there is a specific conversation between Detective Morris and Calvin Rexroad that's on the tape and if the Court would allow I'll just briefly read. Detective Morris asks my client, 'How old is Riley?' The Defendant states, 'Well, she told me she was 15 but on Facebook she don't say.' Detective Morris states, 'Okay.' My client states, 'Because everything is private on there.' Detective Morris states, 'All right. But you said

at some point she told you she was 15.' Defendant says, 'Well she said do I have a problem with her being 15. I said yeah, you know. I didn't say yes. I didn't say no.' That's the portion I'm asking the Court to exclude."

Defendant argued the statement was hearsay. The State argued the statement was not being offered to establish the truth of the matter asserted, *i.e.*, R.H.'s actual age. Instead, the State argued the statement would be offered to show defendant believed he was communicating with a 15 year old. The court denied defendant's motion, finding the statement fell under the state-of-mind exception to the hearsay rule.

¶ 5        At defendant's August 2011 trial, the State moved to dismiss the indecent solicitation to meet charge, which the trial court allowed. R.H. (born July 18, 1995) testified she was 15 years old when defendant sent her a Facebook message that said, "Wow, you are really so beautiful." R.H. did not respond but told her parents, who contacted the police about the message. R.H. testified she personally never sent defendant any type of communication.

¶ 6        Detective Robb Morris of the Champaign police department testified he sent messages to defendant impersonating R.H. from R.H.'s Facebook account with her permission. In response to defendant's initial message, Morris responded, "You are so sweet, thank you. I don't recognize your name, though, and my mom is freaky about stuff like that. I have an e-mail address that she does not know about, though, if you want to use that." The message then provided that e-mail address.

¶ 7        Morris testified he had no further contact with defendant on Facebook. However, he received six e-mail messages on the e-mail account Morris created to give to defendant. The first message was sent from defendant on May 19, 2011. The message included a telephone number. Morris obtained a loaner phone from the Champaign Telephone Company and set up a phone number and account for purposes of the investigation. Morris testified he and defendant exchanged 442 text messages between the loaner phone he was using and the phone number provided in the e-mail message from defendant.

¶ 8        Morris sent the first text message to defendant on Friday, May 19, 2011. However, that message along with approximately 10 to 15 other messages were lost because the phone Morris was using did not have an "SD" card and the battery on the phone died. When he powered the phone back on, the text messages were gone. Morris resumed contact with defendant the following week. Morris did not remember the specifics of the lost messages he received. However, he testified he "had established quite quickly a number of things, including the elements of the [charged] offenses, *** but none of that information was retained by the phone."

¶ 9        Morris testified he, while impersonating R.H., and defendant communicated with each other between May 23 and May 27 via text message. In the text messages, Morris told defendant he was 15 and ready to have sex but nervous. In many of the text messages, Morris stated the messages were being sent from R.H.'s high school. Morris sent defendant a text message stating he knew defendant was "older, like 40 or something" and asked what defendant looked like. Defendant responded he was 6 feet 2 inches tall, with dishwater blonde hair, an average build, and baby blue eyes. Morris and defendant then exchanged messages about what R.H. and defendant would do on a date. Defendant said he would buy

condoms. Defendant also stated he would perform oral sex on R.H. and described how they would have sexual intercourse. During another exchange, defendant again described performing oral sex on R.H., described how they would have sexual intercourse, and how he wanted R.H. to perform oral sex on him. In one message, defendant asked if R.H. would let him ejaculate inside her without a condom. Morris responded, "If u don't care that people find out u got a 15-year-old schl girl prego." They also discussed what R.H. would tell her mother to get out of the house. They arranged to meet at an IGA grocery store parking lot so they could go back to defendant's residence.

¶ 10      Morris testified a young lady who resembled R.H. in physical appearance but was older and working at the police department at the time impersonated R.H. for the planned meeting with defendant on Friday, May 27, 2011. Detective Morris testified he went to the parking lot at Centennial High School near the scene of the scheduled meeting between defendant and the young lady impersonating R.H. Morris saw defendant arrive at the meeting place and gesture toward the young lady impersonating R.H. from about 50 feet away. When defendant started walking toward who he thought was R.H., the officers on the scene moved in and arrested defendant. Defendant's cell phone was found on the ground underneath him at the time of his arrest.

¶ 11      Detective Morris testified he interviewed defendant after his arrest. During the interview, which was played for the jury, defendant said R.H. told him she was 15. However, he denied ever talking to or texting R.H. about sex. Defendant claimed he lost his cell phone two weeks earlier and found it the day before in some bushes outside his apartment. However, the phone records showed a sexually explicit message was sent from defendant's phone to R.H. the morning of his arrest, which would have been after he claimed to have found his phone.

¶ 12      Defendant testified at trial and denied texting R.H. explicit sexual messages. He again claimed he lost his phone the weekend before his arrest and did not find the phone until the day before his arrest. Defendant said he was in the area of his arrest getting job applications when he received a text message. He did not pay attention to who sent the message because he was thinking about his job applications. He responded to the text message from R.H.'s cell phone, but he claimed he did not think about who he was meeting. Shortly thereafter, the police arrested him.

¶ 13      On August 31, a jury found defendant guilty of indecent solicitation of a child. On October 14, 2011, the trial court sentenced defendant to 8 years in prison with credit for 144 days' presentence custody credit. The court also ordered defendant to pay a mandatory $500 fine because he had been convicted of a sex offense. Finally, the court ordered defendant to pay court costs. That same day, defendant filed a motion to reconsider his sentence. On October 27, 2011, the court denied defendant's motion to reconsider sentence.

¶ 14      This appeal followed.

¶ 15                 II. ANALYSIS

¶ 16              A. Jury Instructions

¶ 17      At the time defendant was accused of indecent solicitation of a child, section 11-6(a) of the Criminal Code of 1961 (720 ILCS 5/11-6(a) (West 2010)) stated:

"A person of the age of 17 years and upwards commits the offense of indecent solicitation of a child if the person, with the intent that the offense of aggravated criminal sexual assault, criminal sexual assault, predatory criminal sexual assault of a child, or aggravated criminal sexual abuse be committed, knowingly solicits a child or one whom he or she believes to be a child to perform an act of sexual penetration or sexual conduct as defined in Section 12-12 of this Code." 720 ILCS 5/11-6(a) (West 2010).

Defendant argues the jury was given incomplete and misleading jury instructions because it was not told it had to find defendant possessed the intent to commit aggravated criminal sexual abuse to find defendant guilty of indecent solicitation of a child. Further, the jury was not instructed it must find defendant knew or believed R.H. was under 17 years of age.

¶ 18        The trial court instructed the jury, in part, as follows:

"A person of 17 years or older commits the offense of indecent solicitation of a child when he solicits a child under the age of 17, or one who he believes to be a child under the age of 17, to do an act which, if done, would be aggravated criminal sexual abuse.

The words solicit or solicitation mean to command, authorize, urge, incite, request, or advise. To sustain the charge of indecent solicitation of a child the State must prove the following propositions: First proposition. That the defendant solicited a child under the age of 17 years, or one who he believed to be a child under the age of 17 years to do any act which, if done, would be aggravated criminal sexual abuse.

And second proposition: That the defendant was then 17 years of age or older. If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty. If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

See generally Illinois Pattern Jury Instructions, Criminal, No. 9.01 (4th ed. 2000) (modified instruction given to jury) (hereinafter, IPI Criminal 4th No. 9.01); Illinois Pattern Jury Instructions, Criminal, No. 9.01A (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 9.01A); Illinois Pattern Jury Instructions, Criminal, No. 9.02 (4th ed. 2000) (modified instruction given to jury) (hereinafter, IPI Criminal 4th No. 9.02). According to defendant, based on these jury instructions, the jury was allowed to convict defendant without first determining the State proved beyond a reasonable doubt he had the "requisite intent to commit aggravated criminal sexual abuse" when he sent the text messages. Further, the jury was allowed to find defendant guilty without the State establishing defendant knew or believed R.H. was under 17 years of age.

¶ 19        The State argues defendant forfeited this issue by failing to object or offer alternate jury instructions at his trial and by failing to raise the issue in his posttrial motion. *People v. Sargent*, 239 Ill. 2d 166, 188-89, 940 N.E.2d 1045, 1058 (2010). In *Sargent*, our supreme court stated:

"Supreme Court Rule 366(b)(2)(i) (155 Ill. 2d R. 366(b)(2)(i)) expressly provides that '[n]o party may raise on appeal the failure to give an instruction unless the party shall have tendered it.' In addition, our court has held that a defendant will be deemed to have procedurally defaulted his right to obtain review of any supposed jury instruction error

if he failed to object to the instruction or offer an alternative at trial and did not raise the issue in a posttrial motion. *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007).

> Limited relief from this principle is provided by Supreme Court Rule 451(c) (177 Ill. 2d R. 451(c)), which states that 'substantial defects' in criminal jury instructions are 'not waived by failure to make timely objections thereto if the interests of justice require.' ***

> The purpose of Rule 451(c) is to permit correction of grave errors and errors in cases so factually close that fundamental fairness requires that the jury be properly instructed. The rule is coextensive with the plain-error clause of Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)) ***." *Sargent*, 239 Ill. 2d at 188-89, 940 N.E.2d at 1058.

When determining whether something constitutes plain error, we must first determine whether error occurred. *People v. Walker*, 392 Ill. App. 3d 277, 294, 911 N.E.2d 439, 456 (2009).

¶ 20    Here, the trial court erred in the way it instructed the jury. The jury instructions did not instruct the jury in order to find defendant guilty it must find defendant had the intent to commit aggravated criminal sexual abuse when he sent the text messages. See *People v. Carter*, 405 Ill. App. 3d 246, 251-52, 939 N.E.2d 46, 50 (2010). Further, the jury instructions stated the jury could convict defendant of this offense if the person he solicited was under 17 years of age regardless of whether defendant knew or believed the minor was under the age of 17. We note IPI Criminal 4th Nos. 9.01, 9.01A, and 9.02 did not correctly state the law at the time defendant was tried. These instructions were recently amended effective January 18, 2013. See Illinois Pattern Jury Instructions, Criminal, Nos. 9.01, 9.01A, 9.02, http://state.il.us/court/CircuitCourt/CriminalJuryInstructions/CRIM%2009.00.pdf (eff. Jan. 18, 2013).

¶ 21    As the First District stated in *Carter*, "The 1999 amendment *** added two mental states as elements of the offense: (1) the defendant must intend to commit one of the sex offenses identified in the statute, such as aggravated criminal sexual abuse; and (2) the defendant must know or believe the victim to be under 17 years of age." *Carter*, 405 Ill. App. 3d at 252, 939 N.E.2d at 50-51.

¶ 22    Because we find the trial court erred in the way it instructed the jury, we turn to the second step of the plain error analysis, *i.e.*, determining (1) whether "the evidence is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence; or (2) the error is so fundamental and of such magnitude that the defendant is denied the right to a fair trial and the error must be remedied to preserve the integrity of the judicial process." *Carter*, 405 Ill. App. 3d at 252, 939 N.E.2d at 51; see also *People v. Herron*, 215 Ill. 2d 167, 178-79, 830 N.E.2d 467, 475 (2005). In *People v. Sharp*, 391 Ill. App. 3d 947, 957-58, 909 N.E.2d 971, 979-80 (2009), this court stated it would "take our supreme court at its word and find plain error only in exceptional circumstances in which ' " 'the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " ' " *Sharp*, 391 Ill. App. 3d at 957-58, 909 N.E.2d at 979-80 (quoting *People v. Crespo*, 203 Ill. 2d 335, 348, 788 N.E.2d 1117, 1124 (2001), quoting *United States v. Cotton*, 535 U.S. 625, 631-32 (2002), quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)).

¶ 23    We first note the evidence in this case was not closely balanced and clearly established defendant's intent to commit the offense of aggravated criminal sexual abuse and his belief he was communicating with someone under 17 years of age. The evidence established explicit text messages were sent from defendant's phone to a phone he thought belonged to R.H. These text messages described in detail the sexual activities that were to occur when he and R.H. met. Further, the text messages establish defendant believed he was communicating with a 15-year-old girl. Finally, defendant's explanation the explicit text messages were sent during a period when his phone was lost was not credible. One sexually explicit message was sent from his phone after he claimed he had found the phone.

¶ 24    We also conclude the error involving the jury instructions was not of such a magnitude or so fundamental defendant was denied the right to a fair trial. This error did not affect the integrity of the judicial process. In fact, the error in this case did not affect the defense put forward by defendant. According to defense counsel's closing argument, "the ultimate issue here is who sent the text messages." Defense counsel wisely chose not to argue whoever sent the text messages did not know or believe "R.H." was under 17. Further, defense counsel wisely chose not to argue the person sending the text messages to "R.H." did not intend to engage in the explicit sexual acts referenced in the text messages with "R.H." The evidence was overwhelming whoever sent the messages intended to engage in numerous sexual acts with a girl he thought was 15 years old.

¶ 25    Defendant next argues his trial counsel's failure to object to the erroneous instructions constitutes ineffective assistance. To establish ineffective assistance of counsel, a defendant must establish both his attorney's actions were so deficient they were unreasonable and he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). As we stated earlier, defendant's only possible defense was he did not send the text messages. Defendant's counsel understandably chose to pursue this defense. As a result, the incorrect jury instructions had no effect on the jury's verdict, and defendant was not prejudiced by the erroneous jury instructions. As stated, the evidence was overwhelming whoever sent the text messages intended on engaging in numerous sexual acts with a girl he believed to be 15 years old. The jury concluded defendant sent the text messages.

¶ 26                        B. Defendant's Actions Were Criminal

¶ 27    According to defendant, "even taking the State's allegations as true, [his] acts were not criminal and so his conviction cannot stand." Defendant argues the State did not prove he committed a crime because there was no victim, his text conversations with Detective Morris were constitutionally protected speech, and his presence at the meeting place was induced by police conduct so outrageous it violated due process. We disagree.

¶ 28    Defendant contends the State was required to prove not only R.H. was injured, but the injury was the result of a criminal act (the solicitation of sexual conduct or penetration) committed by defendant. Defendant points out he only sent R.H. one Facebook message which said, "Wow, you are really so beautiful." According to defendant, the sexually explicit messages were sent to Detective Morris, who was only impersonating a 15-year-old girl. Because R.H. was never exposed to any sexually explicit or even suggestive language,

defendant argues she was not victimized as contemplated by the indecent-solicitation-of-a-child statute.

¶ 29    According to defendant, "the State failed to establish the *corpus delicti* of the offense because it could not establish beyond a reasonable doubt proof of criminal agency or injury." Defendant provides no authority for the proposition the State had to prove an injury to an actual minor to establish an inchoate offense such as solicitation. As a result, defendant forfeited this argument pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008).

¶ 30    Regardless of his forfeiture, defendant's actions constituted a criminal act as defined by section 11-6(a) of the Criminal Code (720 ILCS 5/11-6(a) (West 2010)). He knowingly solicited someone he believed to be a child to commit a variety of sexual acts, including oral sex and intercourse, with the intent the sexual acts would be committed. See *People v. Ruppenthal*, 331 Ill. App. 3d 916, 920, 771 N.E.2d 1002, 1005 (2002) ("The offense of solicitation is complete when the principal offense is commanded, encouraged or requested with the intent that it be committed."). The actual sexual act commanded, encouraged, or requested does not have to occur before the offense of solicitation is complete. *Ruppenthal*, 331 Ill. App. 3d at 920, 771 N.E.2d at 1005.

¶ 31    The fact a minor was not victimized is irrelevant. As the First District noted in *Ruppenthal*:

"Defendant is being punished for his intent to engage in sexual activity with someone he *** believed to be under the age of 17 and his solicitation of that activity. The fact that defendant's words were transmitted to an adult does not negate defendant's belief that he was speaking to a minor, which is the culpable act defined by statute. The specific intent required to prove the elements of the offense of solicitation can be inferred from the surrounding circumstances and acts of the defendant." *Ruppenthal*, 331 Ill. App. 3d at 920, 771 N.E.2d at 1005.

As the First District noted, "the element of criminal intent 'transforms mere recitation of "loose" words which may mandate first amendment protection into the offense of solicitation.' " *Ruppenthal*, 331 Ill. App. 3d at 920, 771 N.E.2d at 1005 (quoting *People v. Lewis*, 84 Ill. App. 3d 556, 561, 406 N.E.2d 11, 15 (1980)).

¶ 32    The General Assembly clearly acted within its authority to define this type of conduct as criminal.

"The Illinois Constitution empowers the legislature to define conduct that constitutes a crime and determine the nature and extent of the punishment for that offense. [Citation.] The State of Illinois has a legitimate interest in protecting minor children from the indecent solicitation of sex acts by adults. *** As with the child abduction statute in *Williams*, if an adult and a minor discuss sexual activity and the adult displays the intent to engage in that activity, it is virtually impossible for law enforcement to prevent such a crime from occurring unless the legislature treats it as an inchoate offense." *Ruppenthal*, 331 Ill. App. 3d at 922, 771 N.E.2d at 1006-07.

¶ 33    Defendant cites *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), as support for his argument his conviction must be overturned as the indecent solicitation of a child statute "cannot be applied to criminalize [defendant's] actions because the text and email

communication[s] [were] not obscene, *** recorded no crime, and *** created no victim through [their] production." According to defendant, his "text communication with Detective Morris was only simulating a conversation between an adult and a minor. No minors were actually involved in the production of the text messages at issue, and consequently, no minors were injured."

¶ 34   The Supreme Court's decision in *Free Speech Coalition* does not support defendant's argument his conviction should be overturned. The Court made clear in that case "[t]he Government, of course, may punish adults who provide unsuitable materials to children, [citation], and it may enforce criminal penalties for unlawful solicitation." *Free Speech Coalition*, 535 U.S. at 251-52. The Court later stated:

"To preserve [First Amendment] freedoms, and to protect speech for its own sake, the Court's First Amendment cases draw vital distinctions between words and deeds, between ideas and conduct. [Citations.] The government may not prohibit speech because it increases the chance an unlawful act will be committed 'at some indefinite future time.' [Citation.] The government may suppress speech for advocating the use of force or a violation of law only if 'such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.' [Citation.] There is here no attempt, incitement, solicitation, or conspiracy. The Government has shown no more than a remote connection between speech that might encourage thoughts or impulses and any resulting child abuse. Without a significantly stronger, more direct connection, the Government may not prohibit speech on the ground that it may encourage pedophiles to engage in illegal conduct." *Free Speech Coalition*, 535 U.S. at 253-54.

As the Supreme Court stated above, the government may suppress speech that advocates the incitement of imminent illegal action likely to produce that illegal action. *Free Speech Coalition*, 535 U.S. at 253.

¶ 35   Defendant's first amendment rights were not violated by his conviction in this case. He was convicted of encouraging imminent illegal sex acts with a minor with the intent those lawless acts would occur. The element of criminal intent in section 11-6(a) (720 ILCS 5/11-6(a) (West 2000)) " 'transforms mere recitation of "loose" words which may mandate first amendment protection into the offense of solicitation.' " *Ruppenthal*, 331 Ill. App. 3d at 920, 771 N.E.2d at 1005 (quoting *Lewis*, 84 Ill. App. 3d at 561, 406 N.E.2d at 15).

¶ 36   Defendant also argues law enforcement's conduct in this case was "so outrageous and shocking it exceeded the bounds of fundamental fairness and denied [him] his right to due process." According to defendant:

"Detective Morris was the one soliciting. He solicited [defendant] into committing a crime. Prior to Morris's involvement, [defendant] had only sent one innocuous Facebook compliment to R.H. Instead of letting that be the end of the communication, Morris encouraged [defendant] to correspond by email and then text messages. It was Morris, not [defendant], who instigated the sexual discussions and prodded [defendant] to be explicit."

Defendant forfeited this argument by failing to raise it in the trial court. See *People v. D'Angelo*, 223 Ill. App. 3d 754, 781, 585 N.E.2d 1239, 1257 (1992). Regardless of

defendant's forfeiture, the conduct of the police in this case was far from outrageous. Defendant was not denied his right to due process.

¶ 37                                   C. Fines and Fees

¶ 38     Defendant next argues the circuit clerk did not properly apply the presentence custody credit he was awarded by the trial court to his "Drug Court Program" fine. Defendant also argues the basis for the "State Police Services" assessment imposed by the circuit clerk is unclear. Defendant argues this assessment should either be vacated or the cause remanded for the trial court to determine the basis for the assessment.

¶ 39     The State argues we do not have jurisdiction over the assessments in question because those assessments were imposed after the October 27, 2011, denial of defendant's motion to reconsider sentence. The State focuses on a computer printout "receipt" included in the record dated December 30, 2011. According to the State's argument:

> "Defendant's challenge on appeal is not to the orders entered by the trial court and listed in his notice of appeal, in which, as shown above, there is no error. Instead, he seeks credit against and vacation of assessments listed in the December 30, 2011, 'receipt' listing those assessments. [Citations.] Defendant thus seeks such relief as to assessments not made by the trial court and imposed after entry of the orders listed in his notice of appeal."

¶ 40     Defendant stated in his notice of appeal filed October 31, 2011, he was appealing the October 21, 2011, denial of his motion to reconsider sentence. Defendant's motion to reconsider sentence was actually denied on October 27, 2011. On January 20, 2012, this court granted defendant's motion for leave to file a late notice of appeal. The late notice of appeal stated the nature of the order appealed from was defendant's "Conviction, Sentence, and Denial of Motion to Reconsider." Defendant listed October 27, 2011, as the date of the judgment or order.

¶ 41     Our supreme court has stated, "A court cannot confer relief, even from void orders, if the court lacks jurisdiction." *People v. Gutierrez*, 2012 IL 111590, ¶ 14, 962 N.E.2d 437. We hold we do have jurisdiction over this portion of the appeal. While not identical to the situation in the case at bar, we find our supreme court's recent ruling in *Gutierrez* instructive, and we are guided by its reasoning.

¶ 42     In that case, the defendant argued several fines and fees assessed against him were improperly imposed. *Id.* ¶ 3, 962 N.E.2d 437. The State argued the appellate court lacked jurisdiction to consider the defendant's arguments for the following reasons: "(1) the fee was ordered by the circuit clerk rather than by the court, and the appellate court's jurisdiction is generally limited to reviewing final orders of the circuit court; and (2) defendant's notice of appeal did not indicate that he was appealing the assessment of any fees or fines." *Id.* ¶ 7, 962 N.E.2d 437.

¶ 43     Our supreme court stated notices of appeal are to be liberally construed within limits. *Id.* ¶ 9, 962 N.E.2d 437. Citing its decision in *People v. Smith*, 228 Ill. 2d 95, 105, 885 N.E.2d 1053, 1058 (2008), the court stated the notice of appeal in *Smith* from a circuit court's November 10, 2004, judgment of conviction "could not fairly and adequately be read as

encompassing the court's order of February 21, 2006" denying Smith's motion for sentence correction no matter how liberally the supreme court construed the notice of appeal. *Gutierrez*, 2012 IL 111590, ¶ 9, 962 N.E.2d 437. However, the court distinguished *Smith* from the defendant's situation in *Gutierrez*, stating:

> "Here, by contrast, defendant appealed from the final judgment in his case. His first notice of appeal indicated that he was appealing from the denial of his motion to reconsider the sentence, but listed the wrong date. Defendant then filed an amended notice that listed the date December 28, 2008, the date of final judgment. Defendant's notice of appeal substantially conformed to the form provided in Rule 606(d) (Ill. S. Ct. R. 606(d) (eff. Sept. 1, 2006)), but omitted the section where a defendant can identify if he is appealing from anything other than his conviction.
>
> ***
>
> *** [W]here defendant's notice of appeal listed the date of final judgment and did not indicate that defendant was appealing anything other than his conviction, the State was adequately informed of the nature of defendant's appeal, and the appellate court had jurisdiction." *Id.* ¶¶ 10-12, 962 N.E.2d 437.

Later in the opinion the court stated, "Because defendant's notice of appeal properly brought up his entire conviction for review, the appellate court had jurisdiction to act on void orders of the circuit clerk." *Id.* ¶ 14, 962 N.E.2d 437.

¶ 44 In the instant case, defendant's late notice of appeal adequately informed the State defendant was appealing his conviction, sentence, and denial of his motion to reconsider sentence. This included the assessments at issue here. As a result, the State should not have been taken by surprise by defendant's challenge of these assessments.

¶ 45 As for the State's argument the assessments in question were imposed after the trial court denied defendant's motion to reconsider sentence on October 27, 2011, the State cites this court to nothing in the record other than a "receipt" as support for its jurisdictional argument. Contrary to the State's argument, the "receipt" does not establish the assessments in question were imposed after the trial court denied defendant's motion to reconsider sentence. We find little significance in the December 30, 2011, date included on the "receipt." Considering the court's docket included in the record was printed on December 30, 2011, it appears the December 30, 2011, date on the "receipt" only signifies the date the "receipt" was printed when preparing the record for defendant's appeal.

¶ 46 Neither the State nor defendant in their respective briefs to this court addressed a docket entry dated August 31, 2011, which stated the assessments in question were imposed on that date. In the opinion this court filed on March 28, 2013, this court relied on that docket entry as establishing this court's jurisdiction. However, as the State correctly pointed out in its petition for rehearing, the docket entry appears to have been erroneously entered, as the trial court did not sentence defendant until October 14, 2011. That being said, we still conclude we have jurisdiction over this portion of defendant's appeal.

¶ 47 As a result of the erroneous docket entry, some confusion exists regarding when the assessments in question were imposed in this case. In *Gutierrez*, the supreme court was also faced with contradictory dates in the record in that case. According to the supreme court's

decision:

> "The State notes that there is some confusion as to when the circuit clerk imposed the public defender fee. The Party Finance Summary Query provided to defendant lists two dates: 'FILED 08/22/2007,' and 'STATUS 08/01/2008.' The 'filed' date is one day after the complaint was filed, and the 'status' date is the date that defendant was sentenced. The logical inference is that the fee was assessed on the date that defendant was sentenced. Thus, the notice of appeal, which clearly indicated that defendant was appealing from the court's final judgment, was sufficient to confer jurisdiction on the appellate court to consider defendant's entire conviction." *Id.* ¶ 12, 962 N.E.2d 437.

In the case *sub judice*, the trial court ordered defendant to pay a $500 fine and court costs at the sentencing hearing. The "receipt" contained in the record shows the amount of the assessments in question are included in the total "Cost Amount" included on the "receipt."

| | |
|---|---|
| "Cost Amount | 457.00 |
| Fine Amount | 500.00 |
| Restitution | .00 |
| Other Amounts | .00 |
| Total Amount | 957.00" |

As a result of our review of the record, we can logically infer the circuit clerk (1) considered the assessments at issue part of the "court costs" the trial court ordered defendant to pay and (2) implemented these assessments at the time of sentencing.

¶ 48 We further find the State's reliance on *People v. Jake*, 2011 IL App (4th) 090779, 960 N.E.2d 45, and *People v. Alghadi*, 2011 IL App (4th) 100012, 960 N.E.2d 612, is misplaced. Unlike the case *sub judice*, the fees in question in *Jake* and *Alghadi* were in the "nature of a separate civil penalty," *i.e.*, collection and late fees, which had to be "challenged by a cause of action separate from the criminal case." See *Jake*, 2011 IL App (4th) 090779, ¶ 23, 960 N.E.2d 45; see also *Alghadi*, 2011 IL App (4th) 100012, ¶ 23, 960 N.E.2d 612. As a result, we find we have jurisdiction over this issue.

¶ 49 On the merits, we first address defendant's argument he is entitled to monetary credit pursuant to section 110-14 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-14(a) (West 2010)), for the 144 days he was incarcerated prior to sentencing. The State concedes defendant is entitled to credit against the drug court fine but not the sexual assault fine. We do not accept the State's concession.

¶ 50 Section 110-14(a) (725 ILCS 5/110-14(a) (West 2010)) states: "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant." However, section 110-14(b) (725 ILCS 5/110-14(b) (West 2010)) states: "Subsection (a) does not apply to a person incarcerated for sexual assault as defined in paragraph (1) of subsection (a) of Section 5-9-1.7 of the Unified Code of Corrections." Section 5-9-1.7(a)(1) of the Unified Code of Corrections (730 ILCS 5/5-9-1.7(a)(1) (West 2010)) states in relevant part: " 'Sexual assault' means the commission or attempted commission of the following: *** indecent solicitation of a child ***."

¶ 51    Because defendant was incarcerated for the indecent solicitation of a child, defendant is not entitled to presentence custody credit against any of his fines pursuant to section 110-14(b) of the Code (725 ILCS 5/110-14(b) (West 2010)).

¶ 52    We next examine the circuit clerk's imposition of certain assessments. The circuit clerk has no authority to impose fines. *People v. Swank*, 344 Ill. App. 3d 738, 747-48, 800 N.E.2d 864, 871 (2003) (imposing a fine is a judicial act). Defendant takes issue with the $5 drug court program assessment (55 ILCS 5/5-1101(f) (West 2010)) and the $10 State Police services assessment.

¶ 53    We first address the drug court program assessment. Although the drug court assessment pursuant to section 5-1101(f) of the Counties Code (55 ILCS 5/5-1101(f) (West 2010)) is labeled a fee, it is actually a fine where, as here, defendant did not participate in drug court. See *Jake*, 2011 IL App (4th) 090779, ¶¶ 28-29, 960 N.E.2d 45. The State concedes the drug court program assessment is a fine which can only be imposed by the trial court. Although not raised in defendant's brief, the State points out the circuit clerk also imposed a State Police operations assessment pursuant to section 27.3a of the Clerks of the Courts Act (705 ILCS 105/27.3a (West 2010)). This is also a fine that can only be imposed by the trial court. See *People v. Millsap*, 2012 IL App (4th) 110668, ¶ 31, 979 N.E.2d 1030. As a result, we must remand this case for the trial court to vacate these two fines and reimpose them if applicable.

¶ 54    With regard to the State Police services assessment imposed by the circuit clerk, both defendant and the State agree the statutory basis for this assessment is unclear. Because an appellant is not allowed to hoist the burden of argument and research on this court, we would normally forfeit an issue such as this. However, because we must remand this case for the trial court to vacate the drug court program fine and the State Police operations fine and then determine whether those fines should be reimposed, we order the trial court to determine (1) whether the State Police services fund assessment made in this case is a fine or fee and (2) its applicability to defendant. If it is a fine, the trial court shall vacate the fine imposed by the circuit clerk and determine whether it needs to be reimposed by the court.

¶ 55    Although not raised by either party, to avoid an unnecessary appeal or postconviction petition, we also order the trial court to perform the same analysis for the $52 victims fund fine imposed by the circuit clerk on defendant. Based on the title given to this fine by the circuit clerk's printout and by the amount of the fine, it appears the circuit clerk imposed a violent crime victims assistance (VCVA) fund fine (725 ILCS 240/10(b) (West 2010)). The circuit clerk has no authority to impose a VCVA fine. *Alghadi*, 2011 IL App (4th) 100012, ¶ 21, 960 N.E.2d 612. If this is a VCVA fine, the trial court will need to recalculate the fine, taking into account any additional fines imposed by the trial court on remand.

¶ 56    We again note as this court noted in *People v. Folks*, 406 Ill. App. 3d 300, 309, 943 N.E.2d 1128, 1135 (2010), "[t]he judicial and clerical time expended on accurate calculation of the precise assessment of these monies, much of which may never be collected, is phenomenal."

¶ 57                                III. CONCLUSION

-13-

¶ 58     For the reasons stated, we affirm defendant's conviction but remand this case to the trial court for it to vacate any fines improperly imposed by the circuit clerk and impose any mandatory fines applicable to defendant. Because the State successfully defended a portion of the criminal judgment, we grant the State its $50 statutory assessment against defendant as costs of this appeal. See *People v. Smith*, 133 Ill. App. 3d 613, 620, 479 N.E.2d 328, 333 (1985) (citing *People v. Nicholls*, 71 Ill. 2d 166, 178, 374 N.E.2d 194, 199 (1978)).

¶ 59     Affirmed in part; cause remanded with directions.